W. P. CONRAD and others v. J. L. MOREHEAD and others.

*Mining Operations—Lessor and Lessee—Covenants, express and implied.*

1. Where a lease for ninety-nine years was executed, by which a tract of land was conveyed for mining purposes, the lessor covenanting that the lessee may enter upon the land and erect the machinery, &c., necessary to carry on mining operations, and that, if the same shall become unprofitable, he or his heirs might surrender the lease at any time; and the lessee covenanting to pay the lessor the one-tenth part of the gold or other metals procured upon the land; *Held,* there is an implied covenant on the part of the lessee that he will work the mine in a reasonable manner, and his failure to do so for a considerable period is a breach of such covenant, and works a forfeiture of the lease.

2. Express and implied covenants in a deed, discussed by MERRIMON, J.

CIVIL ACTION removed from Davidson and tried at July Special Term, 1882, of GUILFORD Superior Court, before *Gilliam, J.*

The plaintiffs are the heirs of Henry Conrad and the defendants are the administrators of John M. Morehead.

On the 14th day of February, 1833, the said Conrad and Morehead executed a deed containing mutual covenants, in which Conrad leased to Morehead all that tract of land lying on Four Mile branch in Davidson county (describing it), containing one hundred and sixty-five acres, more or less, for the term of ninety-nine years, to have and to hold the same, together with all its mines, minerals, &c., to the said Morehead, his heirs and assigns, during said term of ninety-nine years from this day ensuing, and fully to be completed and ended. And Conrad, for himself and heirs, covenanted with Morehead and his heirs, that the latter may at all times enter upon the land and dig into and upon the same, and search for gold, silver and all other metals and minerals, and the same when found, to use, work and obtain; and to use all such timber as may be required for mining purposes, building, &c., erect machinery and use the water, &c.; and at or before the expiration of this lease, the said Morehead or his heirs may renew the same for the same length of time, and that he or they may, at any time when they think proper, surrender this or any other subsequent lease. And Morehead, for himself and heirs, covenanted to pay one tenth part of all the gold and silver, or other metals that may be procured from said land, and to account for the same quarterly, if so required.

The other stipulations are not material to the case. The instrument was signed and sealed by Henry Conrad and John M. Morehead.

The plaintiffs claim title to the said land, and have brought this suit to have the same sold by order of the court for partition.

The case states that, after the above mentioned deed was made, Morehead opened one or more shafts on the land to mine gold, which were worked by hand for some years, and he then erected machinery, engine-houses and other buildings necessary for more

extensive operations, which he carried on until the last of the year 1849, when he ceased to mine the property. The engines and machinery were moved off the land in 1855. He left the property in care of one Younce, his agent, who lived about a mile from it, and kept the keys of the houses, and saw that they were kept occupied for Morehead until his death in 1866, and for the defendants, his administrators, after his death and until 1877, by which time all the houses had decayed and become unfit for occupancy. While Morehead operated the mines, he collected a quantity of mineral specimens to be exhibited to persons wishing to buy the property, and left the same after the year 1849, with his said agent, to be exhibited. The defendants, after the death of their ancestor, and up to 1876, visited and claimed the mines and endeavored to sell the said lease.

The plaintiffs' ancestor had possession of the cultivated parts of the tract up to his death in 1835, and they at all times since.

The property is believed to be very valuable for mining purposes.

In 1879, before suit was brought, the plaintiffs offered the absolute title to it at public sale, after due advertisement, for partition, when the defendants forbade the sale, claiming the right to the property under the said lease to the expiration of the term.

Conrad, during his life, and the plaintiffs, since his death, have paid the taxes on the property; and in 1878 the plaintiffs took actual possession of the whole of it, and worked the mines and found gold, and, at the commencement of this suit, had actual and exclusive possession.

His Honor, upon consideration of the facts, refused the judgment demanded, and ordered that the action be dismissed, and the plaintiffs appealed.

*Messrs. Scott & Caldwell,* for plaintiffs.
*Messrs. Dillard & Morehead,* for defendants.

3

MERRIMON, J. The deed before us creates a lease for ninety-nine years, determinable, before it expires by its own limitation, at the will of the lessee. By its terms the lessee might surrender the lease at any time during its continuance. *Doe* v. *Dixon*, 9 East., 15; 4 Wait, Ac. & Def., 203; Arch. L. & T., 93.

The lease, however, might be determined by a forfeiture of the same. What causes work such a forfeiture, depends upon the covenants contained in the lease, express or implied. The right of a landlord to enter for a forfeiture of a term by the tenant, arises, either by implication of law without any stipulation upon the subject between the contracting parties, or where it is matter of express stipulation in the deed or contract, under which the tenant occupies the demised premises.

Where the covenants are express, there need ordinarily be little difficulty in settling the rights of the parties: these are what the parties make them.

Implied covenants, however, are such as the law creates, implies, in the absence of express stipulation, in regard to the existing relations between the lessor and lessee; and they not infrequently spring out of express covenants. They depend for their existence on the intendment and implication of the law, and are such as the law raises from the relations of the contracting parties to each other, in respect to the lease, in the absence of any express agreement on the subject between them. The nature of the contract of lease, the subject matter of the same, the express covenants contained therein, and the like considerations, give rise to the implied covenants and determine their nature and the extent of them. Hence it has been held, that where land has been granted for a term of years, by the words *demise* or *grant*, without any express covenant for quiet enjoyment, the lessee or his assigns, if ousted by rightful title, may sustain an action on the implied covenant that the lessor warranted that he had a good title at the time of the execution of the deed creating the lease. This is because the word *demise* implies the power of letting, as the word *grant*, that of giving.

And so, also, it has been held, in the absence of an express covenant in that respect, that there is an implied covenant on the part of the lessee that he will use the land demised to him in a husband-like manner, and not unnecessarily exhaust the soil by negligent or improper tillage. In another case, it was held, where the lessee covenanted to pen and fold his flock of sheep, which he should keep on the premises, upon such parts thereof as the same had been usually folded, there was an implied covenant *to keep a flock of sheep.* A number of similar illustrations might be cited. Taylor, L. & T., §§252, 253; Arch., *supra*, 68, 69; *Scott* v. *Rutherford*, 92 U. S. Rep., 107.

In the case before us the lessee covenanted expressly to pay the lessor "one-tenth part of all the gold, silver and other metals that may be procured from said land, and to account for the same quarterly, is so required." There is no express covenant that the lessee shall work the mine continuously, or in any particular way, or at all; but there is manifestly an implied covenant on the part of the lessee that he will work it as such mines are usually worked, and with ordinary diligence, under the surrounding circumstances; not, indeed, simply for his own advantage and profit, but as well to the end the lessor may have his toll "quarterly, if he shall so require," or at such longer intervals as he may see fit to prescribe. Taylor, *supra*, §421; *Rosley* v. *Walker*, 5 Term Rep., 373; 4 Wait, *supra*, 246; Arch., 68.

Such covenant arises by necessary implication. It would be unjust and unreasonable, and contravene the nature and spirit of the lease to allow the lessee to continue to hold his term a considerable length of time, without making any effort at all to mine for gold or other metals. Such a construction of the rights of the parties would enable him to prevent the lessor from getting his tolls under the express covenant to pay the same, and deprive him of all opportunity to work the mine himself, or permit others to do so. The law does not tolerate such practical absurdity, nor will it permit the possibility of such injustice.

CONRAD *v.* MOREHEAD.

The lessee is protected by an express covenant; if the mine should turn out worthless or unprofitable, he might in that case, by the express terms of the lease, surrender it, and thus end his obligation to the lessor; but he cannot hold his term indefinitely, one, two, ten, twenty or thirty years, or until it expired by its own limitation, and not work the mine, pending all that time, at all. Such is not the contract between the lessor and lessee. It is of the essence of the contract, necessarily implied, that the lessee should work the mine with reasonable diligence, or surrender the lease, as he had the right to do by express stipulation, so that the lessor might, in the first alternative, get the tolls; or, in the other, work the mine himself, or sell, or let it to some other person, in his discretion. This construction is reasonable and just, and in the absence of any express stipulation in respect to working the mine, the law implies that this was the contract between the lessor and lessee.

The lessee worked the mine for a number of years, and until the last of the year 1849. Since that time, neither himself in his life-time, nor his administrators since his death, have worked it at all. In 1855 the lessee removed the machinery from the mine and land embraced in the lease. In 1878 the plaintiffs took actual possession of all the property, and worked the mine, and, at the time of the bringing of this action, had actual and exclusive possession.

In thus failing to work the mine for a long period of time, for twenty years and more, the lessee broke his implied covenant to do so, and forfeited his term. The lessors had the right to reënter by reason of such breach, take and hold possession as they did do, and thus terminate the lease. Taylor, *supra*, §698; Collyer on Mines, 10. The lease is terminated and the defendants have no right, interest or claim under the same.

There is error. Judgment reversed, and judgment for the plaintiffs according to this opinion.

Error.                                        Reversed.