[L. A. No. 1097.   Department Two.—October 17, 1903.]

ACME OIL AND MINING COMPANY, Appellant, v. H. L. WILLIAMS, W. W. BURTON, and H. L. WILLIAMS, JR., Respondents.

OIL LANDS—LEASE—ROYALTY—IMPLIED CONDITION FOR DILIGENT OPERATION—FORFEITURE FOR BREACH.—Where the sole consideration for a lease of oil lands was a royalty of ten cents per barrel of oil produced and payable on the 5th of each and every month during the existence of the lease, and the lessee covenanted to complete two wells in ninety days, and ten wells within one year, there is an implied covenant or condition for diligent operation of the wells sunk, to the best advantage of both parties, which is as effective as if expressed in the lease, and is of the essence of the contract; and for a substantial breach of such implied condition, the lessor may re-enter and claim a forfeiture of the lease.

ID.—CESSATION OF OPERATION—EXECUTION SALE OF APPLIANCES AND LEASEHOLD—ENTRY FOR CONDITION BROKEN—TERMINATION OF LEASE.—Where, after sinking and operating two wells as agreed, and paying royalties therefrom for two months, the lessee ceased to operate the wells sunk, for several months, and allowed the appliances and oil stored in the tanks, and the leasehold interest to be sold under execution, and allowed the purchaser to take possession and exclude the lessee, the lessor had the right to enter for condition broken, both as against the lessee and the purchaser under execution sale, and to terminate the lease.

ID.—REDEMPTION BY LESSEE FROM EXECUTION SALE.—The attempt of the lessee to redeem from the execution sale, long after the lessor had entered and declared a forfeiture of the lease for condition broken by the lessee, cannot affect such re-entry and declared forfeiture.

ID.—TENDER OF ROYALTY—ACTION OF EJECTMENT.—The tender by the lessor of royalty for the oil which was sold under execution, whatever effect it might have upon an action in equity by the lessee to be relieved from the forfeiture of the lease, cannot sustain an action of ejectment brought by the lessee against the lessor and his subsequent lessees, after the re-entry of the lessor for condition broken by the lessee.

APPEAL from a judgment of the Superior Court of Santa Barbara County.  W. S. Day, Judge.

The facts are stated in the opinion of the court.

J. C. Black, and B. F. Thomas, for Appellant.

Richards & Carrier, and John J. Boyce, for Respondents.

LORIGAN, J.—This is an action in ejectment, and plaintiff appeals on the judgment-roll alone from a judgment in favor of defendants.

The findings show that the defendant H. L. Williams on June 7, 1897, leased certain oil lands in Santa Barbara County to plaintiff.  The lease executed by the parties recites that, "In consideration of the covenants and agreements hereinafter contained, and the royalties hereinafter reserved and agreed to be paid" him, Williams leased to the plaintiff company a described tract of land, and the right to enter thereon and bore wells for petroleum oil, maltha, naphtha, asphaltum, gas, etc., and to erect all necessary works for that purpose, and remove them when it saw fit without hindrance.  And then provides that "The party of the second part agrees to begin operations on said land, and the development of the deposits contained therein, after receiving possession thereof, and to complete the sinking of two wells within ninety days, and to complete the sinking of ten wells within one year from date hereof, and they agree to pay to said party of the first part, on the fifth day of each and every month during the existence of this lease, for the privileges above conferred, and as rental in full for said premises, a royalty of ten cents per barrel for each and every barrel of merchantable oil, of whatever kind, taken by them from said premises and sold or disposed of during the preceding month."  And in addition, "It is further agreed that, if default be made by the said party of the second part in the payment of the royalties, as above provided, for more than ten days, or in the keeping of any of the covenants or agreements by them to be kept or performed, then the party of the first part shall have the right to re-enter upon and take possession of said premises, and, at his option, to terminate this lease."  On the execution of

the lease, plaintiff entered on the premises, sunk two wells within the required time, and on August 11, 1897, commenced pumping oil, and paid the lessor the stipulated royalties for August and September.

On January 5, 1898, under an execution upon a judgment obtained against plaintiff, all the oil pumped from said wells and stored in tanks on the premises, and all the tanks, derrick, pumping-plant, and personal property used in working said wells, were sold to W. W. Burton, one of the defendants, who, on February 2, 1898, purchased the leasehold interest of plaintiff, likewise sold under execution. On January 15th, Williams, the lessor, entered into possession of the premises, claiming a forfeiture of the lease, and pumped the wells. On the 2d of February, 1898, the day said premises were sold to him upon execution, Burton entered into possession of the premises and appurtenances, claiming the right of possession by virtue of his purchase of the leasehold at said sale, and pumped said wells, and thereafter bored and pumped additional wells, eight in number. On February 15, 1898, plaintiff tendered to said Williams, as royalty for oil sold, the sum of eleven dollars, which Williams refused to accept, claiming that the lease was forfeited, and that he had taken possession for conditions broken. On March 2, 1898, he served upon plaintiff a written notice that he had taken such possession, and declared the lease forfeited for conditions broken; for abandonment of the premises for more than two months; for having permitted the leasehold and the property and appliances, necessary in the operation of the wells, and the products thereof, to be sold at judicial sale, and for failure and neglect to work the wells, or pay any royalties for the same. About the time of the service of this notice upon the plaintiff, the said Williams executed a lease of the same premises to the other defendants in this action. On May 26, 1898, plaintiff tendered to Burton, the purchaser of the leasehold premises at the execution sale, a sum sufficient to redeem, and demanded possession of the premises from him, but Burton refused to either accept the tender or to surrender the possession. These are the only facts disclosed by the findings which are necessary to be considered on this appeal, because the principal point to be considered, as far as appellant is

concerned, is whether the defendant Williams had the legal right to, and in fact did, declare a forfeiture of the lease for conditions broken. If he had that right, the judgment must be affirmed.

It is insisted by the appellant that no covenant in the lease was broken, because the two wells provided for were sunk within the required time, and royalty for such oil as was shown to be produced was paid. These, however,. were not all the covenants of the lease. Covenants may be implied, as well as express, and in oil leases, and others of that particular character, where the consideration for the lease is solely the payment of royalties, there is an implied covenant, not only that the wells will be sunk, but that if oil is produced in paying quantities they will be diligently operated for the best advantage and benefit of the lessee and lessor.

The sole consideration usually moving the lessor in extending oil leases is, and the only consideration for the particular lease involved here was, the royalties the lessor would receive from proper and continuous pumping of oil, after it had been developed in paying quantities. These leases are only valuable on development, and are then only valuable to both parties, to the extent that the product may be secured and disposed of, and when the only consideration for the lease is the share which the lessor will obtain of what is produced, there is always an implied covenant that diligence will be used toward such production.

There are few other mining enterprises where delay is so dangerous, and where diligence in securing immediate possession of the mineral is so necessary as in mining for oil. As to the precious metals, fixed in the veins which hold them, they remain intact until extracted.

Oil, on the contrary, is of a fluctuating, uncertain, fugitive nature, lies at unknown depths, and the quantity, extent, and trend of its flow are uncertain. It requires but a small surface area, in what is known as an oil district, upon which to commence operations for its discovery. But when a well is developed the oil may be tributary to it for a long distance through the strata which holds it. This flow is not inexhaustible, no certain control over it can be exercised, and its actual possession can only be obtained, as against others in the same

field, engaged in the same enterprise, by diligent and contin-uous pumping. It is the property of anybody who can acquire the surface right to bore for it, and when the flow is pene-trated, he who operates his well most diligently obtains the greatest benefit, and this advantage is increased in proportion as his neighbor similarly situated neglects his opportunity. Hence it is, that ever since the discovery of petroleum in this country, leases of oil lands, with royalty to the lessor on the product, have contained provisions, not only for the immediate sinking of wells and their number, but for diligent operation after oil has been struck, and where such leases do not con-tain express provisions to this effect, and the only consider-ation for their execution is the share in the product which the lessor, either in kind, or as a royalty, is to receive, it is neces-sarily implied, as of the essence of the contract, that the lessee shall work the wells with reasonable dispatch for their mu-tual advantage. It is not necessary that technical words should be inserted in such a lease in order to raise the con-dition. If a reasonable and fair interpretation of its terms shows, that it was made to depend on doing something essen-tial to its object and purpose, the law implies the condition to attain that end. (*Petroleum Co.* v. *Coal & Coke Mfg. Co.,* 89 Tenn. 391; *Conrad* v. *Morehead,* 89 N. C. 35.)

The lease under consideration here falls within the cate-gory of leases above referred to, and is governed by the same principles. The only inference which can be drawn from its provision that royalties are to be paid on the 5th of each month, is that work should be prosecuted with reasonable energy to provide them. Independent of this inference, how-ever, as the sole and only consideration to the lessor for the extension of this lease, was the benefit and advantage in royalties which he might derive under it, and as this benefit could only accrue through diligent operation of the wells, the law raises an implied covenant for such diligent opera-tions, as of the very essence of the lease. As this covenant was implied from the nature of the lease, it stands upon the same footing as if it was expressly contained therein, and the lessor was warranted, if the condition was not performed, in re-entering and taking possession of the premises, and terminating the lease. While the general rule is, that for-

feitures are discountenanced in law, there are occasions, when the only protection a landlord has is through the exercise of this reserved right, and the case at bar presents one of those occasions. If the right of forfeiture could not be exercised under such circumstances, a lessor would be at the mercy of his lessee; his land would be burdened by a lease which, while it could, and should, be made profitable through the diligence contemplated, would in fact be profitless through neglect; the lessor could not make other arrangements for the development of his property and his interest in the fee in the oil district might consist of a small holding, surrounding which numerous other operators would be successfully working, drawing off the oil to his irreparable injury. These are some of the peculiar circumstances surrounding leases of this character which favor the right of re-entry for condition broken. (*Maxwell* v. *Todd,* 112 N. C. 686.)

Applying the principles we have discussed to the case at bar: The only condition for this lease was the royalties which Williams was to receive, and which could only be obtained through diligent operation of the wells. Royalties were only paid for two months, and for several months the company had ceased to operate the wells; all the appliances with which they were operated were allowed to be sold under execution, on a judgment against the company, including the oil stored in the tanks subject to royalties. The leasehold interest was likewise permitted to be sold, and the purchaser to take possession under it, exclude the company, and operate the wells.

Under these circumstances the defendant Williams took possession of the leasehold premises for condition broken, and under the terms of the lease, and facts disclosed, we think he properly did so.

The attempt of the company to redeem from Burton's purchase of the leasehold interest under the execution sale, months after Williams had taken possession, did not affect Williams's declared forfeiture of the lease, or his re-entry upon the premises. Williams had a right to re-enter for condition broken, not only as against the company, but against any purchaser of the leasehold interest at execution sale, who might claim the right to possession of the premises under it.

Neither did the tender of some money for royalties just

before bringing this action change the situation. Such a tender would have been proper, as preliminary to maintaining an action in equity to be relieved from the forfeiture, but did not affect Williams's position to insist upon the forfeiture in this action of law.

We find no error in the record, and the judgment is affirmed.

McFarland, J., and Henshaw, J., concurred.