[Civ. No. 4837. Second Appellate District, Division One.—April 28, 1927.]

SIGOURNEY D. HALL et al., Respondents, v. IRVING V. AUGUR et al., Defendants; INTERSTATE OIL CORPORATION, Appellant.

[1] LEASES—MINES AND MINERALS—OIL AND GAS LEASES—PERFORM-ANCE—ABANDONMENT—EVIDENCE—QUIETING TITLE.—In these actions to quiet title to property described in certain oil and gas leases, the evidence was sufficient to show an abandonment of the leases, where the lessees failed to commence drilling operations or to perform any of the covenants of the leases, except to erect a derrick after the time provided for, and told the original agent they were unable to proceed and assigned their interests.

[2] ID.—ABANDONMENT—FINDINGS.—Abandonment will be more readily found in the case of oil and gas leases than in most other instances.

1. See 18 R. C. L. 1213.

[3] ID.—INCHOATE TITLE—HOLDING FOR SPECULATION—EQUITY.—The rights granted under oil and gas leases are for exploration and development and the title or interest is inchoate until oil or gas is found in quantities warranting operation; and courts will not permit the lessee to fail in development and hold an oil and gas lease for speculative or other purposes, except in strict compliance with his contract for a valuable and sufficient consideration other than such development.

[4] ID.—INCHOATE TITLE—FINDING OF OIL—VESTED RIGHTS—ABANDONMENT.—The inchoate title of the lessee under an oil lease, if no oil is found, ends when the unsuccessful search is abandoned, but if oil is found the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract.

[5] ID. — DUTY OF LESSEE TO DRILL AND DEVELOP PROPERTY — COVENANTS—CONDITIONS.—The lessee's duty to drill and develop the property upon the discovery of oil or gas in paying quantities is not to be regarded as a mere covenant, but where practically the whole consideration must depend upon the undertaking, it is to be treated as a condition precedent to the vesting of rights under the lease.

[6] ID.—FORFEITURE—NONAPPLICABILITY TO OIL LEASES—LACHES.— The rule that forfeitures are not favored in law does not apply to oil and gas leases when the right to declare a forfeiture protects a land owner from the laches of a lessee whose lease is of no value until developed.

[7] ID.—BREACH OF CONDITIONS—RIGHT OF RE-ENTRY—FORFEITURE.— Where there is a breach of the implied condition of an oil and gas lease that the lessee shall drill and develop the lands if circumstances warrant, the lessor may re-enter and claim a forfeiture of the lease.

[8] ID.—ABANDONMENT—ASSIGNMENT—REVIVAL.—In these actions to quiet title to property described in certain oil and gas leases, where the lessees abandoned the leases and indicated their inability to finance the undertaking, and failed to comply with the terms of the leases by not commencing drilling operations, they could not revive the leases by assigning them to third parties.

[9] ID.—ABANDONMENT BY LESSEE—FORFEITURE—ATTEMPTED ASSIGNMENT—CONDITIONS.—In such action, the attempted assignment of

3. Nature of interest in oil lease, note, 25 L. R. A. 226. See, also, 18 R. C. L. 1210.

6. Covenant for diligent prosecution of work in oil lease, notes, 20 Ann. Cas. 1165, 1168; Ann. Cas. 1917E, 1120.

7. Forfeiture of oil and gas lease, note, 31 L. R. A. 673.

8. Forfeiture of lease for breach of condition, note, 26 Am. St. Rep. 910. See, also, 20 Cal. Jur. 366; 18 R. C. L. 1212.

the leases by the lessees did not affect the lessors' declared for-feiture of the leases, but the lessors had a right to forfeiture for conditions broken, not only as against the lessees, but as against any assignee of the lessees who might claim possession of the premises under them.

---

(1) 40 C. J., p. 1098, n. 77. (3, 4) 40 C. J., p. 1059, n. 15, p. 1099, n. 82. (5) 40 C. J., p. 1060, n. 17. (6) 40 C. J., p. 1059, n. 16. (7) 40 C. J., p. 1077, n. 60. (8) 40 C. J., p. 1078, n. 79. (9) 40 C. J., p. 1100, n. 93. (10) 40 C. J., p. 1113, n. 88.

APPEAL from a judgment of the Superior Court of Orange County. R. Y. Williams, Judge. Affirmed.

The facts are stated in the opinion of the court.

Black, Hammack & Black for Appellant.

Kelby & Lawson and Samuel M. Garroway for Respondents.

McLUCAS, J., *pro tem.*—These are consolidated actions for the purpose of quieting title against the various defendants to the property described in certain oil leases. Defendant Interstate Oil Corporation is the holder of said leases and appeals from the judgments rendered for plaintiffs.

Upon trial it was conceded by counsel for defendants that in each case the plaintiffs were the owners of the respective properties set forth in their respective complaints. The evidence offered and admitted showed an assignment by the defendants Augur, Trebell, and Young to the A. & T. Oil Company of the leases involved in each of the actions, bearing date of December 15, 1921; also an assignment by the A. & T. Oil Company of the leases involved in the above actions to Interstate Oil Company under date of December 31, 1921; also an assignment of said leases by the Interstate Oil Company to the Interstate Oil Corporation, dated January 24, 1922; all of which leases, save as to differences in names and properties, and differences not exceeding a period of two months in the respective dates of execution, are identical. The lease appearing in the transcript is dated May 5, 1921, and provides that in consideration of one dollar and of the other agreements contained in said lease, the lessor lets to the lessee for the term of twenty years a cer-

tain lot, together with the exclusive right to explore, drill for, etc., all kinds of crude petroleum, gas, and other hydrocarbon substances. It is covenanted, among other things, that the lessee has already obtained and will obtain other leases similar in form upon other lots situated in the same five-acre tract; that all such leases shall be deemed to constitute one pool or community lease; that as rent and royalty the lessee shall pay to the lessor such proportion of one-sixth part of the proceeds from the sale, at the market price at the well, of all crude petroleum, oil, gas, and other hydrocarbon substances produced from any lots in said tract, as the number of lots leased by the respective lessors bears to the total number of lots in the community lease; that the lessor shall not allow any other person, firm, or corporation to drill any wells upon said ground as long as the lessee shall continue to produce oil in marketable quantities and pay royalties as agreed upon; that no lease shall be accepted as a portion of this community lease after May 30, 1921, and upon that date the community lease shall be deemed closed. The lease further provides: "It is further understood and agreed that it shall be the duty of the lessee to commence the erection of a derrick within thirty days from the closing of this community lease and to commence drilling operations within thirty (30) days thereafter, and that drilling operations from the time they are commenced shall be prosecuted with due diligence, until oil is found in paying quantities, or to a depth at which further drilling would, in the judgment of the lessee, be unprofitable." There is no condition subsequent, no re-entry clause, no forfeiture clause, nor any penalty clause contained in the lease. It appears from the evidence that the defendants did not commence drilling operations within the time prescribed in said lease or at all; nor have the leases ever been canceled or abandoned in writing. Suit was filed on May 22, 1922.

[1] It is urged that appellant owns a leasehold .interest which has never been canceled, terminated or abandoned; that the deed is absolute and contains no condition subsequent, forfeiture, re-entry, or penalty clauses. Before discussing the law of the case it may be well to consider the evidence on the subject of abandonment. It appears that none of the covenants of the lease were ever performed by the lessee, except the erection of a derrick after the period

within which such erection was required by the terms of the lease. No attempt was ever made to commence drilling operations. The lease was executed May 5, 1921. It was a community lease and was to be deemed closed on May 30, 1921. The lessees agreed to erect a derrick within thirty days from the closing of the community lease and to commence drilling operations within thirty days thereafter and to prosecute such driling operations with due diligence. Thus it was required that drilling operations be commenced within sixty days after May 30, 1921, and prosecuted diligently thereafter. Upon failure of the lessee to comply with the terms of the lease, the lessors made new leases of the respective parcels to the Texcal Oil & Refining Company; said leases being dated between October 31, 1921, and July 1, 1922. The witness Logsdon, who was the original agent for the lessees testified that he entered into negotiations with the Texcal Company after one of the lessees, Trebell, told him in September they would not be able to go ahead and that they would quitclaim the leases back to the original lessors; that before negotiating with the Texcal Company the lessees Augur, Trebell, and Young told him they were unable to render financial assistance in carrying out the drilling operations. All these conversations were held prior to December 15, 1921, the date of the assignment of the original lease to the A. & T. Oil Company. The foregoing is the substance of the testimony in respect to abandonment and is not contradicted by any other witness. Abandonment will be more readily found in the case of oil and gas leases than in most other cases. In *Harris* v. *Riggs*, 63 Ind. App. 201 [112 N. E. 36], it is said: "Such a lease may be abandoned, and when once abandoned by the lessee, he cannot thereafter claim or enforce any right thereunder without first securing consent of the lessor or a renewal of the lease. (*Gadbury* v. *Ohio etc. Co.*, 162 Ind. 9, 16 [62 L. R. A. 895, 67 N. E. 259]; *Island Coal Co.* v. *Combs*, 152 Ind. 379, 387 [53 N. E. 452]; *Ohio Oil Co.* v. *Detamore*, 165 Ind. 243, 252 [73 N. E. 906]; *Bartley* v. *Phillips*, 165 Pa. 325 [30 Atl. 842]; *Calhoon* v. *Neely*, 201 Pa. 97 [50 Atl. 967]; *Lowther Oil Co.* v. *Miller etc. Co.*, 53 W. Va. 501 [97 Am. St. Rep. 1027, 44 S. E. 433, 435]; *Van Meter* v. *Chicago etc. Co.*, 88 Iowa, 92 [55 N. W.

108]; 1 Cor. Jur., p. 5 et seq.; 1 Cyc., p. 4 et seq.; Thornton's Law of Oil & Gas, sec. 137.)

[2] "It has been held and supported by sound reason that abandonment may be more readily found in cases of oil and gas leases than in most other instances. [3] The rights granted under such leases are for exploration and development. The title or interest granted is inchoate until oil or gas is found in quantities warranting operation, and courts will not permit the lessee to fail in development and hold the lease for speculative or other purposes, except in strict compliance with his contract for a valuable and sufficient consideration other than such devolopment. (*Gadbury* v. *Ohio etc. Co.,* 162 Ind. 14 [62 L. R. A. 895, 67 N. E. 259]; *Lowther* v. *Miller etc. Co., supra; Huggins* v. *Daley,* 99 Fed. 606 [48 L. R. A. 320, 325, 40 C. C. A. 12]; *Dittman* v. *Keller,* 55 Ind. App. 448, 451 [104 N. E. 40]; *Risch* v. *Burch,* 175 Ind. 621, 627 [95 N. E. 123]; *Dill* v. *Fraze,* 169 Ind. 53, 57 [79 N. E. 971]; *Ramage* v. *Wilson,* 45 Ind. App. 599, 604 [88 N. E. 862].)"

[4] We believe the evidence was sufficient to support the finding of fact by the trial court that the defendants abandoned whatever right, title, or interest they or either of them had in and to such lease prior to the assignment of said lease to the Interstate Oil Corporation. It then remains to determine the rights of the plaintiffs as a matter of law in a suit to quiet title, where the lease has been abandoned by the lessees and where there is no condition subsequent, forfeiture, re-entry, or penalty clauses contained in the lease. The rights of the parties to ordinary oil leases is well stated in *Brookshire Oil Co.* v. *Casmalia etc. Co.,* 156 Cal. 211 [103 Pac. 927], wherein it is said, at page 215: "In regard to such agreements it is said: 'The title is inchoate and for purposes of exploration only, until oil is found. If it is not found, no estate vests in the leasee, and his title, whatever it is, ends when the unsuccessful search is abandoned. If Oil is found, then the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract.' (*Venture Oil Co.* v. *Fretts,* 152 Pa. 451, 460 [25 Atl. 732]; *Steelsmith* v. *Gartlan,* 45 W. Va. 27, 34 [29 S. E. 978]; *Lowther Oil Co.* v. *Miller etc. Co.,* 53 W. Va. 501 [97 Am. St. Rep. 1027, 44 S. E. 433]; *Huggins* v. *Daley,* 99 Fed. 608 [40 C. C. A.

12]; *Gadbury* v. *Ohio etc. Gas Co.,* 162 Ind. 14 [62 L. R. A. 895, 67 N. E. 261]; *Eaton* v. *Alleghany Gas Co.,* 122 N. Y. 417 [25 N. E. 981]; *Funk* v. *Haldeman,* 53 Pa. 242; *Union etc. Co.* v. *Bliven etc. Co.,* 72 Pa. 173; *Grubbs* v. *Grubbs,* 74 Pa. 33; Thornton on Oil, sec. 53.)'' However, it has been held by the California courts that an oil lease grants a vested interest where the entire consideration has been paid and there are no conditions in the lease requiring development of the property by the lessee. (*Chandler* v. *Hart,* 161 Cal. 405 [Ann. Cas. 1913B, 1094, 119 Pac. 516].) In *Taylor* v. *Hamilton,* 194 Cal. 768 [230 Pac. 656], it was held that an oil lease was more than a mere license and was to be considered as a lease of the premises for the purpose of drilling for oil and gas, which was subject to forfeiture under the terms of the lease on sufficient notice being given to the lessees of nonperformance by lessees of conditions contained in the lease. It is well settled that the principal purpose of an oil and gas lease is to procure the exploration of the land for oil and gas, to be followed by the development of it if circumstances warrant. (*Dill* v. *Fraze,* 169 Ind. 53 [79 N. E. 971].) The grantee cannot omit to drill and develop and hold the grant for speculative purposes purely. **[5]** The duty to drill and develop the property upon the discovery of oil or gas in paying quantities is not to be regarded as a mere covenant, but in a case like this, where practically the whole consideration must depend upon the undertaking, it is to be treated as a condition precedent. (*Gadbury* v. *Ohio etc. Gas Co.,* 162 Ind. 9 [62 L. R. A. 895, 67 N. E. 259].) **[6]** The rule that forfeitures are not favored in law does not apply to oil and gas leases. Forfeitures are usually against conscience and without equity, and it is for these reasons that courts of chancery ordinarily refuse relief in such cases; but an exception to the rule must exist where it is against equity to permit the defendant to longer assert his title. The lack of any other remedy and the danger that the oil and gas might be withdrawn through wells on other lands makes a case of this kind appeal to the chancellor and calls upon him to enforce the incurred forfeiture by removing the cloud from the title. In general, equity abhors a forfeiture, but not when it works equity and protects a land owner from the laches of a lessee whose lease is of no value until developed. (*Gadbury* v. *Ohio etc.*

*Gas Co., supra; Huggins* v. *Daley,* 99 Fed. 606.) In *Acme Oil & Min. Co.* v. *Williams,* 140 Cal. 681 [74 Pac. 296], where, as in the case at bar, the defendant leased a certain tract of land and the right to enter thereon and drill for oil, the sole consideration for the execution of the lease being the payment of royalty, the court held that in leases of this character "there is an implied covenant, not only that the wells will be sunk, but that if oil is produced in paying quantities they will be diligently operated and for the best advantage and benefit of the lessee and the lessor." The court further said (page 685) : "It is not necessary that technical words should be inserted in such a lease in order to raise the condition. If a reasonable and fair interpretation of its terms shows that it was made to depend on doing something essential to its object and purpose, the law implies the condition to attain that end. (*Petroleum Co.* v. *Coal & Coke Mfg. Co.,* 89 Tenn. 391 [18 S. W. 65] ; *Conrad* v. *Morehead,* 89 N. C. 35.)" [7] Where there is a substantial breach of such implied condition, the lessor may re-enter and claim a forfeiture of the lease. In *Acme Oil & Min. Co.* v. *Williams, supra,* it is said : "If the right of forfeiture could not be exercised under such circumstances, a lessor would be at the mercy of his lessee; his land would be burdened by a lease which, while it could, and should, be made profitable through the diligence contemplated, would in fact be profitless through neglect; the lessor could not make other arrangements for the development of his property and his interest in the fee in the oil district might consist of a small holding, surrounding which numerous other operators would be successfully working, drawing off the oil to his irreparable injury. These are some of the peculiar circumstances surrounding leases of this character which favor the right of re-entry for condition broken. (*Maxwell* v. *Todd,* 112 N. C. 686 [16 S. E. 926].) " To the same effect are: *Sledge* v. *Stolz,* 41 Cal. App. 209 [182 Pac. 340] ; *McIntosh* v. *Robb,* 4 Cal. App. 484 [88 Pac. 517] ; *Payne* v. *Neuval,* 155 Cal. 46 [99 Pac. 476].

[8] Applying the principles discussed to the present case: The main consideration for the execution of these leases was the payment of royalties to the plaintiffs, which could only be obtained through drilling the oil wells. Royalties were never paid because no wells were drilled. The lessees before the assignment of the lease on December 15,

1921, both by word and deed indicated their inability to finance the undertaking and their intention to abandon the lease. For a period of several months the lessees failed to comply with the terms of the lease requiring drilling to commence within sixty days from May 30, 1921. Under these circumstances the plaintiffs executed new leases to the Texcal Oil & Refining Company between October 31, 1921, and July 1, 1922. Defendants could not revive said leases after their abandonment by assigning them to third parties. Besides, the evidence shows that no drilling was ever commenced by the assignees of the lessees. [9] The attempted assignment of the leases did not affect the plaintiffs' declared forfeiture of the leases by their act in leasing to other parties. The plaintiffs had a right to forfeiture for conditions broken, not only as against the lessees, but as against any assignee of the lessees who might claim possession of the premises under them.

For the reasons stated, it is ordered that the judgments be affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 27, 1927.