[Civ. No. 15961. Second Dist., Div. Two. Dec. 11, 1947.]

MARK L. BANKS et al., Respondents, v. CALSTAR PETRO-LEUM COMPANY (a Corporation), Appellant.

790

Edmund F. Barker for Appellant.

Olive E. Boswell and Martin J. Weil for Respondents.

WILSON, J.—This is an action to quiet title to real property and to declare terminated an oil and gas lease alleged to have been forfeited by reason of the abandonment in 1944 of the oil well drilled on the property and the failure of the lessee to do further exploration work. From a judgment for plaintiffs defendant has appealed.

The material facts necessary to a consideration of the appeal as found by the court and substantiated by the evidence are as follows: The lease was executed on May 12, 1938; in August, 1939, a well was drilled to a depth of 7,651 feet, which

had an initial daily production of 1,400 barrels of 36 gravity oil. In October, 1941, appellant discontinued producing oil, gas and other hydrocarbon substances from the well and has produced none since that time for the reason that in the opinion of appellant production from the well did not render it economically feasible to continue further operations, and since that date appellant has not operated, deepened or redrilled the well. In January, 1944, appellant pulled the casing and plugged the well with cement. In April, 1945, respondents notified appellant that it was in default in its operations under the lease and that the lease would be terminated and forfeited unless within 90 days thereafter operations were commenced for the drilling of a new well or for the redrilling or deepening of the well theretofore drilled on the premises. Appellant failed to do any work on the property and in August, 1945, respondents gave notice to appellant of their election to terminate the lease and demanded a quitclaim deed to the property.

1. *The lease was abandoned.* The failure of appellant to perform any work on the premises between October, 1941, when the operation of the well ceased, and January, 1944, was in violation of the terms of the lease requiring the operation of the well or the drilling of an additional well.

Appellant's intention to abandon the lease was indicated by a notice given by it on January 15, 1944, to the Division of Oil and Gas of the State of California of its intention to abandon the well. On January 20, the Division of Oil and Gas approved appellant's plan for abandonment. In a report filed with the division dated February 10, 1944, appellant stated that in January, 1944, all tubing had been pulled from the well; a cement plug had been placed at 7,372 feet; 7-inch casing had been shot at 1,870 feet; all casing from 1,794 feet to the surface had been pulled; a cement plug had been placed in the well between a depth of 709 and 734 feet, and a third plug had been placed in the 13⅜-inch casing at the surface. These acts made it impossible to produce any oil from the well. The report of abandonment was approved by the Division of Oil and Gas, whereupon appellant removed the tanks and pumping equipment that had been used by it in the operation of the well.

An abandonment may be more readily found in cases of oil and gas leases than in most other instances. (*Hall* v. *Augur*, 82 Cal.App. 594, 599 [256 P. 232].) ■ Abandon-

ment, whether it be a complete abandonment or a cessation of operations with the intent of never resuming, is a question of intent and may be proved by the acts and conduct of the party who is alleged to have abandoned the property in controversy. (*Thornton* v. *Phelan*, 65 Cal.App. 480, 483 [224 P. 259] ; *Rea* v. *Glenn*, 133 Cal.App. 82, 87 [24 P.2d 204].) ▮ Although nonuser alone without any intention of abandonment does not constitute an abandonment, nonuser coupled with acts such as have been described above manifestly indicate the intention of the lessee to effect a complete abandonment.

▮ The rights granted under such leases as the one involved in this action are bestowed for the purpose of having the property explored and developed to the end that the lessor will obtain a financial return from his property. A lessee will not be permitted to fail in the development of the property and to hold the lease for speculative or other purposes unless such holding is in strict compliance with his contract and for a valuable and sufficient consideration other than such development. (*Hall* v. *Augur, supra; Rehart* v. *Klossner*, 48 Cal.App.2d 40, 45 [119 P.2d 145].)

▮ While forfeitures are not ordinarily favored by courts of chancery, there is an exception when it is against equity to permit a lessee to hold possession of property indefinitely without performing any of the duties required of him by his contract.

▮ Appellant asserts that it was its intention to drill additional wells on the premises if wells were drilled on adjoining property that produced oil in paying quantities. Such a self-serving declaration is insufficient to permit a lessee to hold a lease for an indefinite period with no further exploration on the property and without paying any consideration. (*Sauder* v. *Mid-Continent Pet. Corp.*, 292 U.S. 272, 280 [54 S. Ct. 671, 78 L.Ed 1255, 1259].) It is more like an afterthought than an intent seriously entertained at the time of the plugging of the well and the removal of the equipment from the property.

▮ 2. *Arbitration is not a condition precedent to an action to terminate the lease.* The lease contained the following provision: ''In the event of any controversy between the parties as to any matters of fact arising under this lease, such question of fact shall be submitted to arbitration, and the decision of the arbitrators thereon shall be a condition precedent to the right of action on the lease itself.''

Appellant contends that two questions of fact arose which required arbitration under the quoted provision of the lease, to wit: What acts were done or not done by appellant which would evidence an abandonment of the lease, and what damages did respondents sustain by reason of the failure of the lessee to execute a quitclaim deed? Fourteen months before respondents gave notice of default appellant had done all that could possibly be done to indicate its abandonment of the lease and its intention to abandon. Its failure to produce oil, its failure to drill the well to a deeper oil sand, its notice to the Division of Oil and Gas of its intention to abandon, and its plugging the well so as to make it unusable constituted a complete abandonment, thus removing that question from any possibility of arbitration.

Moreover, at the trial of the action appellant relinquished any claim that it might have had to arbitration of the question of damages alleged to have been suffered by respondents by reason of appellant's occupancy of the property, and practically gave its consent to a judgment of abandonment and for damages. At the conclusion of the trial, the court announced its intention to render judgment annulling the lease and for the sum of $2,500 damages, representing the cost of removing the drilling material from the property and restoring the premises to the condition they were in at the time appellant took possession. Thereupon, counsel for appellant stated ''I have one suggestion . . . I understood that plaintiffs are more interested in having the equipment removed from the property. I would make the suggestion . . . that perhaps we should allow the defendant a limited period of time in which to haul it off the lease,'' meaning the equipment and debris then remaining on the property. The court inquired how much time the defendant would require, to which its attorney responded ''About 35 days.''

The court directed counsel for plaintiffs to prepare findings and judgment and the latter's attorney stated: ''My understanding is the form the judgment for damages will take is they will pay $2500 unless the property—unless the equipment is removed from the property and the condition restored to the condition it was in prior to the execution of the lease, prior to the 9th of November.'' To this statement appellant's counsel made no response.

It is stated in respondents' brief and not questioned by appellant that pursuant to the suggestions made by counsel at

the close of the trial, appellant removed the derrick and other equipment that had been placed by it upon the premises but failed to restore the property to the condition in which it had been prior to appellant's possession. That appellant did remove the equipment, as stated in the brief, is made evident by the fact that although the court announced its intention to render judgment for $2,500 damages, the findings and conclusions as signed were to the effect that respondents were entitled to judgment for $425 and judgment was rendered for that amount. By its conduct appellant waived arbitration and consented to a judgment that rendered arbitration unnecessary.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.