[Civ. No. 21956. Second Dist., Div. Two. Mar. 6, 1957.]

BALDWIN M. BALDWIN et al., Respondents, v. SAM KUBETZ et al., Appellants.

David H. Caplow and Jerry K. Fields for Appellants.

Meserve, Mumper & Hughes, Robert A. Stewart, Jr., and Cromwell Warner, Jr., for Respondents.

ASHBURN, J.—Defendant Sam Kubetz and wife appeal from a judgment declaring a forfeiture of the husband's interest as sublessee in a certain oil property. The original lease was made by Frank F. Pellissier and Sons, Inc., to the personal representatives of Anita M. Baldwin, deceased, who have been succeeded in ownership thereof by Baldwin M. Baldwin and others as testamentary trustees of said decedent. Those trustees are plaintiffs herein. In 1944 the original lessees made a sublease to Capital Company which assigned to Harry W. Kline and his wife, who expressly agreed to perform all the terms of the sublease.[1] The Klines, on June 14, 1951, made a sublease to Sam Kubetz and one Joel Brandon but excepted 166 feet surrounding two producing wells and reserved an overriding royalty. Kubetz and Brandon expressly took subject to and agreed to perform all the terms and conditions of the Baldwin sublease. In July, 1952, Kubetz succeeded to the rights of Brandon.

The trustees of the Baldwin estate sued Kubetz, Kline and others for declaratory relief and declaration of forfeiture of their sublease. They alleged violation by Kubetz of (1) a covenant to operate in accordance with customary oil field practices, and (2) continuous drilling requirements of the sublease. The court found these charges to be true. Appellant Kubetz[2] primarily claims insufficiency of the evidence to support the findings[3]

Concerning the manner of operation paragraph 3K of the Baldwin sublease provides: "Lessee agrees at all times to use diligence and observe customary oil field practices and modern methods, appliances and equipment to save all oil, gas or other products produced from said premises, which may be saved at a reasonable profit." The court found that Kubetz from time to time and "continuously on numerous occasions since

---

[1]Capital had previously quitclaimed as to all of the leased land except 30 acres, but the entire acreage was restored to the lease by agreement between plaintiffs and the Klines made on October 15, 1948. The total acreage is sufficient for 44 wells.

[2]We use the singular of plaintiff and appellant, thus referring to Sam Kubetz whose wife appears to be but a nominal party to the action.

[3]The only portions of the judgment now under attack are those relating to the Kubetz interest.

June 17, 1952 . . . violated the provisions of the Los Angeles County Fire Prevention Code, has created and maintained fire hazards, has failed to use and observe oil field practices customary in Los Angeles County, and has failed to use modern methods, appliances and equipment in accordance with standards customary in Los Angeles County. That such actions and course of conduct were wilful and persistent despite repeated warnings and notices." The general nature of appellant's derelictions consisted of inadequacy of equipment to control the flow of oil, thus permitting it to overflow on various occasions; defective electric wiring; inflammable material permitted to collect near the well close to storage tanks and to the liquefied petroleum gas tank. These fire hazards existed before and after notice of default and down to the day of trial, and they resulted in conditions which were not in accordance with customary oil field practices and modern methods of operation. They constituted serious threats to the production and even the existence of the Kubetz well, also to two other producing wells in the immediate vicinity.

Appellant asserts that all violations of this sort had been cured before suit was brought. But evidence which the trial judge was entitled to believe and presumably did accept as credible is to the effect that there were only occasional and partial corrections and that the wilful violations of the pertinent clause of the lease persisted to the time of trial. Appellant has not carried the burden that rests upon one who challenges upon appeal the sufficiency of the evidence. "Such contention requires defendants to demonstrate that there is no substantial evidence to support the challenged findings. As was stated in the oft-cited case of *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, at page 429 [45 P.2d 183]; '. . . the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' which will support the findings, and when 'two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' " (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].) The efficacy of this type of default as a basis for declaration of forfeiture of an oil lease will be discussed later.

The obligation of continuous drilling is found in paragraph 4A of the sublease and requires (as the court found) the sublessee to "continuously drill additional wells, allowing not

more than ninety (90) days between the completion of one well and the beginning of the next well, until an average of one well for each 10 acres of said lands shall be completed thereon, or a total of 44 wells.'' There is no dispute of the fact that Kubetz drilled but one well (known as Kubetz No. 1) and that his predecessor Kline had brought in two producers, nor is it denied that appellant did no drilling whatsoever after February, 1952. In this connection the court concluded: ''That said sublease obligates defendant Sam Kubetz to continuously drill additional wells on said lands, to obtain zone exceptions as may be necessary to permit such drilling, to operate said Kubetz No. 1 well according to customary oil field practices and by the use of modern methods, appliances and equipment, and to keep said well in the most efficient productive state. . . . That defendant Sam Kubetz has not performed said obligations. . . . That none of said obligations has been suspended under the provisions of Paragraph 12 of said sublease, nor has the failure of defendant Sam Kubetz to perform said obligations been excused in any manner.''

Appellant would overthrow this ruling by capitalizing paragraph 12 of the sublease which provides that the obligations of the lessee shall be suspended while lessee is prevented from performing by acts, rules or regulations of governmental agencies, or when prevented by other matters or conditions beyond control of the lessee, whether similar or dissimilar to matters or conditions specifically mentioned. The focal point of the argument is an alleged inability to procure a zoning exception which would permit further drilling. The property had been zoned for light agricultural use some three years before appellant acquired the sublease and a zone exception was necessary for oil drilling. Within 10 days after he acquired the lease appellant applied for and obtained a permit to drill one well; that he did and placed it on production. About six months later he applied for another exception in order to do further drilling but that application was denied. ''That at the time said application was made, heard and denied defendant Sam Kubetz was in violation of the conditions of his first permit, had violated various laws, regulations, or ordinances, and was operating said Kubetz No. 1 well in a manner materially detrimental to the public welfare and the property of other persons in the vicinity, and said application was denied for those reasons.'' (Finding X.) Appellant waited about a year, prepared a

third application which was never filed and let the matter drop about the middle of 1953. Notice of default was served in October, 1954, and suit filed on March 9, 1955, but appellant did nothing further in an effort to drill or obtain permission to drill additional wells.

Appellant claims that there was no obligation to drill additional wells because the existence of the zoning brought the suspension clause into operation and no duty rested on him to procure a zoning exception. First, he argues that the existing state of zoning—for uses exclusive of oil well drilling —precluded him from pursuing that activity, that he was thus prevented from performing his continuous drilling obligation by acts, rules or regulations of a governmental agency. There is no merit in this contention, for the applicable county zoning ordinance provided for the granting of an exception to permit the drilling of an oil well if "it appears probable that there is oil underneath the property under consideration or under adjacent property which oil cannot be otherwise extracted." It required as a condition to the granting of an exception the presentation of an application containing evidence that the applicant, if not the owner of the property, "has the permission of such owner to make such application." The zoning ordinance itself does not prevent drilling; it merely attaches a condition precedent which is easily fulfilled. Appellant says that the signature of the owner is essential but the terms of the ordinance do not so provide, and the practice of the zoning board and the planning commission, as established by undisputed evidence, was to accept a photostatic copy of the lease as evidence of the permission of the owner. Applicant could easily have complied with this requirement. The court found, upon adequate evidence: "That at all times since June 14, 1951, and particularly since October 20, 1954, defendant Sam Kubetz could have applied for and obtained a zone exception to permit the drilling of additional wells on said lands."

Appellant next argues that no duty rested upon him to obtain the drilling permit: "Assuming appellants just did not wish to make application for zone variance, appellants submit that it would then be the obligation of respondents to make such application and then either compel performance of the contract or sue for damages for the breach thereof." As appellant had the exclusive right to drill, this contention, which was also urged at the trial, ignores the basic requirement of fair dealing which is stated thus in *Brawley* v. *Crosby*

*etc. Foundation, Inc.,* 73 Cal.App.2d 103, 112 [166 P.2d 392] : "In this, as in every contract, there is the implied covenant of good faith and fair dealing; that neither party will do anything that would result in injuring or destroying the right of the other to enjoy the fruits of the agreement. [Citations.] The law will therefore imply that under its agreement appellant was obligated in good faith and by its reasonable and best efforts to develop, exploit, produce and make sales of the rotary pump in question."

■ In consonance with this equitable principle it has become accepted law in this state that there is an implied covenant of diligent exploration and diligent operation of any producing wells. (*Acme Oil & Mining Co.* v. *Williams,* 140 Cal. 681, 685 [74 P. 296]; *Jones* v. *Interstate Oil Corp.,* 115 Cal.App. 302, 308 [1 P.2d 1051]; *Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232, 239, 241 [73 P.2d 1163]; 8 Cal. Jur. 10-Yr.Supp. § 80, p. 688.) See also *Sauder* v. *Mid-Continent Petroleum Corp.,* 292 U.S. 272, 279 [54 S.Ct. 671, 78 L.Ed. 1255, 93 A.L.R. 454]; 2 Summers Oil & Gas, perm. ed., § 395, p. 301. Immanent in this implied obligation is that of doing such incidental or subsidiary acts as may be reasonably necessary to accomplish the major purpose,— in this instance the procuring of the drilling permit through an easily obtained zoning exception.

■ Though the lease does not mention the point (having been made before the zoning for agricultural use) defendant acquired it with knowledge of the necessity of procuring an exception and by conduct placed a practical construction upon the lease to the effect that that was his obligation. (12 Cal.Jur.2d § 129, p. 342.) Twice he prepared and presented such applications; also prepared a third which was abandoned without filing.

Appellant was subject to an implied obligation to obtain the necessary drilling permit through a zone variance. Of course, his failure to perform this obligation does not justify his falling back on the suspension clause. See *Stockburger* v. *Dolan,* 14 Cal.2d 313, 317 [94 P.2d 33, 128 A.L.R. 83]; *Watson Land Co.* v. *Rio Grande Oil Co.,* 61 Cal.App.2d 269, 273 [142 P.2d 950].

Appellant argues that he, as assignee, had no privity with plaintiffs and hence owed no drilling obligation to them. Actually he seems to be a sublessee rather than an assignee because he did not succeed to the entire estate of the original sublessee (see *Hartman Ranch Co.* v. *Associated Oil Co.,*

*supra,* 10 Cal.2d 232, 242-243). ▮ Be that as it may, an assignee or a sublessee who is in possesssion is bound to perform the terms of the principal lease or any sublease under which he holds. (*Washburn* v. *A. F. Gilmore Co.,* 116 Cal. App. 370, 374 [2 P.2d 506]; *Carlson* v. *Lindauer,* 119 Cal. App.2d 292, 305 [259 P.2d 925]; *Richardson* v. *Callahan,* 213 Cal. 683, 686 [3 P.2d 927]; 30 Cal.Jur.2d § 243, p. 388; 8 Cal.Jur. 10-Yr.Supp. (1948 Rev.) § 110, p. 722.) ▮ Moreover, appellant expressly assumed and agreed to perform the obligations of the sublease made by plaintiffs as lessors to Capital Company, and that undertaking runs in favor of them as such lessors. (*Hartman Ranch Co.* v. *Associated Oil Co., supra,* 10 Cal.2d 232, 244-248.) There is no merit in appellant's argument in this regard.

▮ We recognize in this state that equity's frown upon enforcement of forfeitures is not directed at cancellation of an oil lease for failure to perform its express or implied drilling obligations. *Acme Oil & Mining Co.* v. *Williams, supra,* 140 Cal. 681, 684: "Covenants may be implied, as well as express, and in oil leases, and others of that particular character, where the consideration for the lease is solely the payment of royalties, there is an implied covenant, not only that the wells will be sunk, but that if oil is produced in paying quantities they will be diligently operated for the best advantage and benefit of the lessee and lessor." At page 685: ". . . as the sole and only consideration to the lessor for the extension of this lease, was the benefit and advantage in royalties which he might derive under it, and as this benefit could only accrue through diligent operation of the wells, the law raises an implied covenant for such diligent operations, as of the very essence of the lease. As this covenant was implied from the nature of the lease, it stands upon the same footing as if it was expressly contained therein, and the lessor was warranted, if the condition was not performed, in re-entering and taking possession of the premises, and terminating the lease. While the general rule is, that forfeitures are discountenanced in law, there are occasions, when the only protection a landlord has is through the exercise of this reserved right, and the case at bar presents one of those occasions. If the right of forfeiture could not be exercised under such circumstances, a lessor would be at the mercy of his lessee; his land would be burdened by a lease which, while it could, and should, be made profitable through the diligence contemplated, would in fact be profit-

less through neglect; the lessor could not make other arrangements for the development of his property and his interest in the fee in the oil district might consist of a small holding, surrounding which numerous other operators would be successfully working, drawing off the oil to his irreparable injury. These are some of the peculiar circumstances surrounding leases of this character which favor the right of reentry for condition broken. (*Maxwell* v. *Todd*, 112 N.C. [677] 686 [16 S.E. 926].)'' To the same effect are *Taylor* v. *Hamilton*, 194 Cal. 768, 779 [230 P. 656]; *Hall* v. *Augur*, 82 Cal.App. 594, 599-600 [256 P. 232]; *John* v. *Elberta Oil Co.*, 124 Cal.App. 744, 747 [13 P.2d 538]; *Alexander* v. *Oates*, 100 Cal.App.2d 266, 267-268 [223 P.2d 264]; 8 Cal.Jur. 10-Yr.Supp. (1948 Rev.), § 60, p. 661, § 95, p. 704. The gist of the decisions is found in this quotation from *Watson Land Co.* v. *Rio Grande Oil Co.*, *supra*, 61 Cal.App.2d 269, 275: ''The usual rule that forfeitures are not favored does not apply to a case such as this, where the productive possibilities of plaintiff's property are blocked for a long term by defendant's lack of ability, or desire, to develop them. (*Slater* v. *Boyd* (1932), 120 Cal.App. 457, 460 [8 P.2d 182].)''.

The foregoing authorities sustain the right of the court to declare terminated appellant's interest under the sublease with the possible exception of the existing producing well and 10 acres surrounding it. They also render unimportant appellant's argument that he made unavailing attempts to induce the Pellissiers, as owners, to join in the application for a zoning exception. ■ In any event that defense could not prevail for defendant cannot excuse nonperformance of his obligation by a showing that he tried but was unable to perform, not unless the impossibility arises out of the nature of the act to be done rather than the inability of the obligor to do it. (12 Cal.Jur.2d § 237, p. 460; § 238, p. 461.)

With respect to the producing well, appellant relies upon paragraph 13A, which says: ''If lessee shall fail to comply with any requirements or obligations in this lease contained, and such failure shall continue for a period of thirty (30) days after the receipt by lessee of written notice from lessor specifying the particulars in which the lease shall be in default . . . then, at the election of lessor this lease and all rights of lessee hereunder shall thereupon cease and terminate, except and only that lessee shall have the right to retain, subject to the terms of the within lease, any wells theretofore completed or on which work is then being done, in good faith

at the time of such forfeiture, together with an area of *then* (10) acres of land surrounding each of said wells for the same period and upon the same terms as are set forth and provided in the within lease, hereinabove set out, in respect to wells completed during the term of this lease. .... The forfeiture provided for in the within paragraph shall be the exclusive remedy of lessor against lessee in the event of failure of lessee to comply with any of the provisions of the within lease designated and relating to drilling requirements hereof.'' Respondents contend that 13A is not applicable and that the field is covered by paragraph 13B, thus precluding application of 13A. ▇ We are unable to agree with respondent in this respect for 13B is general in its terms and must yield to the specific provisions of 13A to the effect that a general forfeiture does not terminate the lessee's rights with respect to a producing well and ten acres surrounding same.

▇ The judgment as to Kubetz Well Number 1 must be sustained, if at all, upon the finding of defendant's wilful and wilfully persistent default in performance of the obligation to maintain and operate the well in conformity with customary oil field practices and modern methods.

*El Rio Oils Ltd.* v. *Chase*, 95 Cal.App.2d 402 [212 P.2d 927], was an action for declaratory relief wherein the court relieved plaintiff lessee from default and forfeiture of its oil lease for noncompliance with the terms concerning payment of royalties. Lessee had contended that the defaulted royalties were not due (because of a difference between the parties as to a proper basis for computation) ; the court held against it on this issue but found lessee had at all times honestly contended that it did not owe and was not obligated to pay the disputed sum, and that an honest dispute existed between lessee and lessors in regard thereto. Lessee was given 15 days after entry of judgment within which to cure the default and, the proper amount having been deposited in court, a final judgment was entered relieving plaintiff of any forfeiture and reinstating the lease. At page 412 this court said, in affirming the judgment: ''Lessors cite cases in which it is stated that 'the rule that forfeitures are not favored in law does not apply to oil and gas leases.' Although this general language is found in some of the decisions it will be noted that the cause of the forfeiture was failure to comply with drilling requirements. . . . Because of the danger that oil and gas from lessors' property might be withdrawn

through wells on adjoining lands the rule as to forfeiture for failing to drill wells is as above announced. No cases have been cited to us in which the courts have departed from the rule that equity abhors a forfeiture and will relieve from it except where the lessee has failed to drill wells according to his contract.'' The quoted language is perhaps broader than the necessities of the case, for it limits the forfeiture rule of oil litigation to defaults in drilling obligations. It should be noted that the breach giving rise to the forfeiture in *Acme Oil & Mining Co.* v. *Williams, supra,* 140 Cal. 681, was a failure to operate existing wells, rather than failure to drill new ones.

The El Rio Oils case, *supra,* was cited in *Crofoot* v. *Weger,* 109 Cal.App.2d 839, the court saying, at page 842 [241 P.2d 1017]: ''In the cited case it was held that the fact a lessee had intentionally failed to pay royalty due under an oil lease did not necessarily mean that the default was wilful within the meaning of section 3275 of the Civil Code where the trial court had found that the lessee had been honest in its assertion that it did not owe the amount demanded, even though it had been mistaken therein.'' Crofoot is one of the more recent applications of rules evolved in the line of cases headed by *Barkis* v. *Scott,* 34 Cal.2d 116 [208 P.2d 367],—principally involving real estate and other installment purchase contracts. Assuming, without deciding, that those cases would apply to the aspect of oil leases now under discussion it nevertheless appears that the instant decree is correct, for appellant was wilfully in default and persisted therein despite notices given him by respondents and regardless of the pendency of the action to declare the lease forfeited. It is a part of the *Barkis* v. *Scott* doctrine that one who is wilfully in default cannot be relieved from a forfeiture, and that Civil Code, section 3275, means what it says in this connection. It was so held in *Baffa* v. *Johnson,* 35 Cal.2d 36, 39 [216 P.2d 13]; *Freedman* v. *Rector, etc. of St. Matthias Parish,* 37 Cal.2d 16, 20 [230 P.2d 629, 31 A.L.R.2d 1]. The language of this court in *Banks* v. *Calstar Petroleum Co.,* 82 Cal.App.2d 789, 792 [187 P.2d 127], is here pertinent: ''The rights granted under such leases as the one involved in this action are bestowed for the purpose of having the property explored and developed to the end that the lessor will obtain a financial return from his property. A lessee will not be permitted to fail in the development of the property and to hold the lease for speculative or other purposes unless such hold-

ing is in strict compliance with his contract and for a valuable and sufficient consideration other than such development. (*Hall* v. *Augur, supra* [82 Cal.App. 594 (256 P. 232)]; *Rehart* v. *Klossner,* 48 Cal.App.2d 40, 45 [119 P.2d 145].)

"While forfeitures are not ordinarily favored by courts of chancery, there is an exception when it is against equity to permit a lessee to hold possession of property indefinitely without performing any of the duties required of him by his contract."

The trial court properly concluded: "That equity and justice require the termination and forfeiture of said sublease as to the defendant Sam Kubetz."

Failure to join Frank F. Pellissier and Sons, Inc., original lessor, as defendant herein does not result in a fatal defect of parties, as claimed by appellant. The action seeks and results in cancellation of a sublease to which Pellissier is not a party; its termination does not affect Pellissier's rights, for the lease to the Baldwin estate and the sublease to Capital Company, which fix Pellissier's rights, survive in full integrity, all of their obligations being enforcible against the plaintiffs herein, the Baldwin trustees. (See *Jones* v. *Feichtmeir,* 95 Cal.App.2d 341, 345 [212 P.2d 933]; *Baines* v. *Zuiebach,* 84 Cal.App.2d 483, 493 [191 P.2d 67].)

Attacks upon the sufficiency of the complaint are found to be without merit, as are certain other points raised by appellant.

The judgment is affirmed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied March 28, 1957, and appellants' petition for a hearing by the Supreme Court was denied May 1, 1957.