[Civ. No. 4530. Third Appellate District.—February 4, 1932.]

WILLIAM F. SLATER et al., Respondents, v. AMBROSE BOYD et al., Appellants.

Guy Eddie and Louis Lamy for Appellants.

L. W. Blodgett and McAdoo, Neblett & Clagett for Respondents.

PARKER, J., *pro tem.*—This is an action to quiet title. From a judgment in favor of plaintiffs, the defendants appeal.

It is conceded that plaintiffs are the owners in fee of the real property in controversy. The defendants claim an interest therein as lessees, under the terms of a written lease and sublease. The court below found the rights or claims of defendants forfeited through failure to comply with the terms and requirements of the lease. ■ The lands involved were demised under what is generally known as a lease for the discovery and development of oil. By its terms it provided as follows:

"Paragraph 3. The lessee agrees to start the drilling of a well for oil on or before February 8, 1927, with heavy service rotary rigs, tools and equipment, and to continue the work of drilling such wells, after the commencement of the same, diligently and continuously until a depth of 4500 feet has been reached, unless oil is discovered in quantities deemed paying quantities by the lessee, at a lesser depth, or unless such formations are encountered at a lesser depth as will indicate to the geologist of the lessee that further drilling would be unsuccessful.

"Paragraph 4. After discovery of oil in said paying quantities in the first well, the lessee agrees to commence the drilling of a second well within ninety days thereafter, and thereafter continuously operate one string of tools, allowing 90 days between the completion of one well and the commencement of the next until further wells have been drilled.

"Paragraph 15. A well in paying quantities is hereby defined as a well which, after being pumped continuously for a period of thirty days, shall produce at least sixty barrels of oil per day."

The lessee commenced operations, and well No. 1, being the only well drilled, was put down to a depth of 4,350 feet. At that point further drilling ceased, and the well was put upon production. The drilling was completed on or about November 30, 1927. As far as the record discloses production

did not begin until January, 1928, and the working schedule and the results are as follows:

"1928. January, Pumped 27 days, 55 barrels per day; February, Pumped 25 days, 56 barrels per day; March, Pumped 25 days, 59 barrels per day; April, Pumped 24 days, 51 barrels per day."

From these figures appellants contend that there was no discovery of oil in paying quantities as the term is defined in the lease, paragraph 15. This phase of the appeal becomes important from the fact that the sole breach claimed was that the lessees had failed to commence drilling on another well, as provided in paragraph 4 of the lease.

Appellants' point is that if there was no compliance with the requirements of paragraph 3, then the conditions under which another well must be commenced, had never arisen. This argument works both ways. If the well from which oil was being produced was not a completed well, within the meaning of the lease, the duty of the lessees was to complete the same. They must take one position or the other. If a completed well, the duty to commence drilling within ninety days was admittedly breached; if uncompleted, the failure to proceed violated the conditions of the lease. Either view supports the judgment, the evidence being sufficient to show that no other well was started.

Appellants then urge that if a noncompliance with the terms of the lease is shown, nevertheless there was no notice of breach given or claim of forfeiture made. Without detailing the procedure, we find that the record negatives the contention on the point. Connected with the question of service of the notice, is the claim of insufficiency of notice. This is predicated upon the fact that the notice given was signed by the lessor alone, without the signature of his wife. The title of the lessor was in him individually, but appellants urge that the presumption of community property would attach, and with that presumption it would be necessary for the wife to join in the notice of breach and cancellation. The interest of the wife is still an expectancy under our law, and the husband has the management and control of the business affairs of the community.

The next ground of appeal is based upon a claim that if notice of breach were given, there was no notice of resultant forfeiture claimed. Here, too, the record negatives the

claim. It is interesting, however, to note the method of presenting this argument. In the opening brief appellants content themselves with a statement of the point, without citation either of the evidence or of authority. Respondents refer to this condition, and appellants' reply is as follows: "We might indulge in similar argument and ask what authority respondents rely on to dispute our contention." All of which is a wonderful aid.

Lastly, the doctrine of the law's abhorrence of a forfeiture is presented. This general rule has been modified in the case of forfeitures for failure to comply with drilling requirements. (*Acme Oil & Min. Co.* v. *Williams*, 140 Cal. 681 [74 Pac. 296]; *Payne* v. *Neuval*, 155 Cal. 50 [99 Pac. 476]; *Hall* v. *Augur*, 82 Cal. App. 594 [256 Pac. 232]; *Taylor* v. *Hamilton*, 194 Cal. 768 [230 Pac. 656].)

In concluding, we desire to comment upon the mode employed in presenting this appeal. The record comes up upon a typewritten transcript of the evidence and the clerk's transcript. In neither the opening or closing brief of appellants do we find any of the evidence upon which reliance is had, and in but a few isolated instances do we find a reference to the page of the transcript. Reference to the transcript as containing "substantially" as claimed, or as "admitting" certain facts, are in themselves argumentative and insufficient to meet the demands of the rules governing appellate procedure.

The opening brief of appellants contains this statement: "We should be very glad, if this Honorable Court would not deem it too much trouble, to read Mr. Boyd's testimony contained in the transcript, as by so doing perhaps the Court would obtain a better knowledge of the true situation, and far better than by merely quoting excerpts thereof by counsel here." We have gone through the transcript in its entirety, mindful primarily of the interest of the parties litigant, rather than in any effort to gladden counsel, and have found no more cause to disturb the judgment than the briefs of appellants indicated. We may, however, predict with some certainty that the time is fast approaching when appeals presented in this slipshod manner will receive but scant notice. Repeated warnings have already been given, and little heed seems to have been taken. A routine of dismissals might cause some awakening to the necessities of

our procedure and bring about a gladness in which both bench and bar might be equal participants.

The judgment is affirmed.

Preston, P. J., and Plummer, J., concurred.