[Civ. No. 8303. First Appellate District, Division One.—July 18, 1932.]

ALICE V. JOHN, as Administratrix, etc., et al., Respondents, v. ELBERTA OIL COMPANY (a Corporation) et al., Appellants.

George W. Nilsson, M. F. McCormick, Charles H. King and Ivan G. McDaniel for Appellants.

F. A. Knight for Respondents.

TUTTLE, J., *pro tem.*—This is an action to quiet title to real property and to forfeit a lease upon the same. Judgment was entered forfeiting the lease, and defendants appeal therefrom.

The complaint contains two causes of action: One, a simple action to quiet title, and the other setting up facts which it is alleged constitute a forfeiture of the lease. The answer, after denying the allegations of the complaint, sets up five defenses, all of which, except the third, are based upon waiver or estoppel. The lease in question is in the usual form of an oil and gas lease. The following portions thereof are pertinent to this inquiry:

"Covenants: Lessee shall enter upon any portion of lands above described, and shall commence actual operations for the drilling for oil thereon with a standard, rotary or combination rig, within two years from the date hereof, and shall prosecute the work so commenced diligently, continuously, and in good faith, with one crew (unforeseen accidents, delays by the elements or by strikes or causes beyond the control of lessee, Sundays and legal holidays excepted) until oil is found in paying quantities, or this lease abandoned by lessee."

"Time is the essence of this lease and it is mutually well understood and agreed by the parties hereto, that each and every express covenant and condition and obligation in this lease must be fully and specifically performed and within the time specified therefor."

"Conditions: It is mutually agreed that upon default by lessee in the performance of any of his agreements, or any of the conditions or stipulations required by him to be performed or observed, this lease shall cease, and lessors may then assume exclusive possession of said land, except as aforesaid. Lessors shall have no other remedy against lessee for breach of the whole or part of this contract beyond enforcing the forfeiture hereinbefore mentioned, and recovering actual damage herein agreed to be paid by lessee."

By mesne conveyances and assignments, defendants became interested in the lease as lessees or otherwise; and the lessors in said lease, by successive extensions, extended and postponed the time for the commencing of actual drilling operations up to and including the first day of January, 1929. Each of said extensions was given in writing by plaintiff G. A. John, who died while this action has been pending. We shall, however, designate him as "plaintiff" in this opinion. The term of the lease was twenty years from its date, November 30, 1920. It was provided therein that the lessee should pay the sum of $50 per month, as rental, until the royalties provided for therein should amount to or exceed that sum. This rental was paid.

It is conceded that neither the original lessee nor any of his assignees ever actually commenced operations for the drilling of oil upon said premises, or any portions thereof. From the evidence it appears that defendants, from the year 1922 to 1928, were drilling for oil upon another property which they had under lease, some quarter of a mile from the John premises. A well was brought in on this other property in 1928. In June, 1928, several months after this well was brought in, a Mr. Delaney, representing defendants, came to plaintiffs' ranch and said he wanted to select a drilling place thereon, and asked for an extension of twenty days within which to commence drilling. Plaintiffs thereupon extended the time seventy-five days, whereupon Delaney said: "Now, Mr. John, if I don't start operations in that time, I will gladly walk in here and hand you a quitclaim deed." In October, 1928, nothing had been done toward drilling on plaintiffs' land, and Mr. Nilsson, representing defendants, came to plaintiff and asked for an extension of time to March 31, 1929. On December 27, 1928, two representatives of defendants called upon plaintiff and requested another extension of time. The latter replied that he would have to discuss the matter with his wife before any extension was signed. No further extension was signed, and this action was commenced on February 1, 1929.

The court found, substantially, that no drilling was ever done upon the property; that plaintiffs did not advise defendants or anyone else that they would grant an extension to the defendants for drilling said land, up to March 31,

1929; that none of the defendants has ever been willing or ready to drill for oil upon said lands, under any conditions whatever; and that plaintiffs are not estopped to assert that defendants have forfeited all rights under said lease, but on the contrary all the rights of the defendants under the terms of said lease expired January 1, 1929. As law, the trial court concluded that defendants and each of them had no right, title or interest in the real property described in said lease.

■ It is first contended that the court erred in sustaining a demurrer to the third defense. The lease provided that if the market price of oil was thirty-five cents per barrel or less, the lessee might, at his option, cease producing oil or developing oil-wells until such time as the market price of oil should be more than thirty-five cents per barrel. The gist of the allegations of this defense is that "the market price of oil is less than thirty-five cents (35c) per barrel of 42 United States gallons, and for that reason the defendants have exercised the option contained in said lease not to drill any oil wells upon the properties owned by the plaintiffs upon which the defendants have an oil and gas lease, as above alleged".

The ruling of the trial court was correct. The precise point was decided adversely to defendants' contention in the case of *McComber* v. *Kellerman,* 162 Cal. 749 [124 Pac. 431, 433], where a similar provision in an oil lease was under consideration. The court there said: "The language was evidently chosen upon the theory that he [defendant] should at all events begin the drilling of a well in good faith, but that after having begun he might be allowed to suspend such drilling until the price rose to seventy-five cents." We conclude that the obligation to *commence* drilling was entirely independent of any consideration based upon the price of oil, and that the provision giving the lessee the option to cease producing or drilling was not operative until operations had actually commenced. The third defense contained no allegations to the effect that drilling operations had commenced, and therein it was vitally defective.

■ It is contended that the finding to the effect that plaintiffs are not estopped to assert a forfeiture is not supported by the evidence. It has been held in this state

that "the rule that forfeitures are not favored in law does not apply to oil and gas leases". (*Hall* v. *Augur*, 82 Cal. App. 594 [256 Pac. 232, 235]; *Acme Oil & Min. Co.* v. *Williams*, 140 Cal. 681 [74 Pac. 296].) Bearing in mind the foregoing rule, we shall proceed to examine more specifically the points raised. It is claimed that lessors "waived their right of forfeiture by their course of conduct for more than six years after the expiration of the two years provided in the lease as the time within which drilling shall be commenced. Before the lessors can reinstate their right of forfeiture they must give the lessees reasonable notice of their intention to demand strict compliance with the terms of the lease." In support of this contention, appellants rely upon that line of cases which follow the rule laid down by Thornton in his work on oil and gas. He there states that "when rent was accepted by the lessor, with knowledge on his part that the lessee was every day violating the covenants of the lease, it was held that the lessor accepting rent could not declare a forfeiture without a reasonable prior notice that further non-compliance would not be waived". (4th ed., 1925, p. 553, sec. 184.)

It will be observed that in the instant case there was no "violation" of the lease during the six-year period. Each extension of time within which to drill was made by the written consent of the plaintiffs. It was only when no work had been done during the last period, from October 1, 1928, to January 1, 1929, that an actionable breach occurred, and immediately thereafter plaintiff notified defendants that the lease was forfeited. It cannot be said that there was any acquiescence in the breach upon which this action is predicated, hence the rule quoted from Thornton is not applicable. The following cases relied upon by appellants— *Consumers' Gas Trust Co.* v. *Ink*, 163 Ind. 174 [71 N. E. 477], *Consumers' Gas Trust Co.* v. *Littler*, 162 Ind. 320 [70 N. E. 363], and *Denniston* v. *Kenova Oil Co.*, 187 Ky. 831 [220 S. W. 1078]—are all predicated upon a situation where the lessor has lulled the lessee into a feeling of security and where it would be wholly inequitable to declare a forfeiture based upon a breach which had been virtually condoned. No such facts are presented by this record. Other cases relied upon, such as *Johnson* v. *Armstrong*, 81 W. Va. 399 [94 S. E. 753], do not specify that drilling operations

should commence within a certain time. In such cases the court stated that a forfeiture should not be declared until the lessee had notice to comply with the condition to drill within a reasonable time. Where, however, the lessee has agreed and is charged with knowledge that he must drill before a specified date, we do not believe that upon a failure to do so a forfeiture should be denied upon the mere failure to give notice that drilling must be commenced at some future date. It is only the absence of a certain expiration date which gives rise to the rule in the Johnson case.

Other authorities cited by appellants have been given careful consideration. They are based, on the whole, upon equitable consideration arising out of the peculiar facts existing in each. Viewing the evidence here from every angle, we cannot see how the trial court could have reached any other conclusion than that pronounced. For some six years defendants held the lease only through the generous acts of their landlord in granting extensions. To say that such acts were "misleading" and "inequitable" is, in truth, "biting the hand which had fed them". Surely, equity should not assist them under such circumstances.

We conclude, therefore, that the findings are amply supported by the evidence, and the record being free from error it is ordered that the judgment be and it is hereby affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 17, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 15, 1932.