[Civ. No. 16864. Second Dist., Div. Two. Dec. 29, 1949.]

EL RIO OILS (CANADA) LIMITED (a Delaware Corporation), Plaintiff and Appellant, v. J. WARREN CHASE et al., Defendants and Appellants.

404

William A. Reppy and Dolley, Knight, Woods & Hightower for Plaintiff and Appellant.

Durley, Todd & Fox, Churchill, Teague & Romney and E. Perry Churchill for Defendants and Appellants.

WILSON, J.—Plaintiff, by its appeal, seeks reversal of the judgment insofar as it determines the manner of computing the royalty to be paid to defendants pursuant to an oil lease from the latter. Defendants have appealed from that portion of the judgment relieving plaintiff from default and forfeiture of the lease for noncompliance with its terms.

Plaintiff (referred to as lessee) is the assignee of a lease executed by defendants to A. A. Weiss, dated January 16, 1937, of a certain parcel of land for the purpose of exploring and drilling for oil and other petroleum products. The lease contained, among others, these provisions:

"The Lessee shall pay Lessor, as royalty, for oil produced, an equal one-eighth (⅛) part of the value of all oil which may be produced and saved from said leased lands after deducting therefrom all oil used in the operation and development of said property and in pumping products from the said property elsewhere and after making the customary deductions for treatment, temperature, water and b.s., at the posted market in the district in which the leased premises are located, for oil of like gravity, on the day the oil is run into the pipe line or tank; settlement to be made by Lessee on or

before the 20th day of each calendar month for accrued royalty for the preceding month, or at Lessor's option, exercised not oftener than once in any one calendar year, upon six months previous notice, Lessee shall deliver into tanks maintained by Lessee on the leased premises or at the mouth of the well to pipe line designated by Lessor, Lessor's one-eighth part of said oil storage limited to thirty (30) days (this last provision being for the protection of the Lessor to insure him against an imposition of a fictitious price).

"Lessee shall pay Lessor, as royalty on gas, one-eighth ($\frac{1}{8}$) of the net proceeds derived from the sale of gas from said property while same is being sold or used off the premises; settlement to be made by Lessee on or before the 20th day of each calendar month for gas sold during the preceding month, but nothing herein contained shall require lessee to market gas from said leased lands, unless said lands are being operated as a gas field. Lessee shall have the right, free of cost to him, to use gas required in the operation and development of said property and in the production and lifting of oil from said wells, and in pumping products from said property elsewhere."

Lessee completed two wells on the property. The oil obtained from them was of a low gravity and heavy consistency. Because of its low viscosity it was difficult to pump the oil from the wells. Lessee found few purchasers interested in buying the type of crude oil produced. After the first year of production lessee adopted a plan of injecting distillate into the wells in such a manner that it mixed with and thinned the native crude oil and made it easier to pump. Because of this method of production a great deal more native crude oil was produced than before. The mixture resulting from the injection of distillate was slightly more valuable than the native crude but the cost of the distillate injected was greatly in excess of any increase in the value of the native crude oil.

Lessee's purpose in injecting the distillate was to aid in the pumping and production of native oil and not to raise the gravity of the crude.

After this practice had been commenced lessee rendered a statement to lessors in which it deducted from lessors' royalty one-eighth of the cost of the distillate injected into the wells and charged lessors 5 cents for each royalty barrel of oil for what was termed a "heating and treating" charge. The oil injected was neither heated nor treated by lessee. After objection by lessors to the deduction for heating and treating

lessee continued to make the same deduction of 5 cents a barrel but termed it "Royalty owner's share of operating overhead."

A dispute ensued which continued over a period of time between lessee and lessors relative to the basis upon which the royalty due lessors should be computed. Lessee having become in default under the terms of the lease for nonpayment of royalty in the sum of $5,229.59, notice of default and demand for payment within 30 days as provided in the lease was given by lessors. Lessee neither paid nor tendered the amount specified in the notice but filed the instant action for declaratory relief alleging the existence of a controversy relating to the rights of the parties under the lease and the notice of default and asking a declaration of plaintiff's rights and duties thereunder. After the expiration of the 30-day period provided in the lease and specified in the notice lessee paid the sum mentioned into court but conditioned that it should be paid out only pursuant to final judgment in the action or to stipulation of the parties. Lessors filed a cross-complaint seeking forfeiture of the lease.

### FINDINGS OF FACT

The findings necessary to a determination of these appeals are that:

1. Lessee "voluntarily failed and refused to pay the full amount of said royalties; . . . voluntarily failed and refused to pay" within 30 days after notice of default the sum of $5,229.59, which was due to lessors as a royalty under the terms of the lease.

2. Lessee entered into an agreement with Douglas Oil Company and accepted a lower stated price for oil together with the obligation of Douglas Oil Company to deliver distillate as therein provided, for the purpose of evading its obligation to bear the entire production expense of injecting distillate in the wells, and for the purpose of attempting to establish an indirect method of charging lessors with a share of such expense.

3. Lessee at all times honestly contended and asserted that it did not owe and was not obligated under the terms of the lease to pay the sum of $5,229.59 to lessors and that it had the right to make the deductions which it did make in computing the royalty, and that an honest dispute existed between lessee and lessors in regard thereto.

4. Lessee failed and refused to pay the royalty and the sum demanded by the notice of default for the sole reason

that it contended and believed it did not owe the amount and was not obligated under the terms of the lease to pay it, and for that reason lessee voluntarily refused to pay the royalties in full during the period from March 1, 1944, to and including the trial of the action.

5. Lessee has at all times contended and at the trial of the case did contend that it was in no way in default under the terms of the lease.

6. At the trial of the action lessee accounted for its production and sale of oil produced from the wells and for distillate delivered to it by Douglas Oil Company, but lessee claimed and asserted at the trial that it was obligated to pay royalty on oil sold to Douglas Oil Company only upon the net barrels of oil after deducting distillate delivered to it and at the rate of 53 cents per barrel thereon.

#### JUDGMENTS

1. A judgment was signed and filed on February 27, 1948, which decreed among other things that:

(a) Lessors recover from lessee the sum of $5,229.59 plus interest and other royalties.

(b) Lessee's right, title and interest under the lease has been terminated and forfeited pursuant to the terms of the lease and lessors' title to the premises is quieted against all claims of lessee; provided that lessee shall be relieved from the forfeiture and reinstated as lessee under the lease in the event that it shall, within 15 days from entry of judgment, pay to the clerk of the court for the benefit of lessors all sums of money declared by the judgment to be owing from lessee.

(c) The court reserves jurisdiction to determine whether lessee has fulfilled and performed the terms and conditions of the judgment in order to be entitled to relief from forfeiture.

2. On April 13, 1948, a final judgment was filed decreeing that:

(a) Lessee had deposited with the clerk of the court for the account of lessors all moneys found by the court to be owing from lessee to lessors.

(b) Lessee should be and is relieved from the forfeiture of the lease and should be and is reinstated as lessee thereunder.

#### APPEALS

1. Lessee appeals from the whole of the judgment filed February 27, 1948.

2. Lessors appeal from the provisions of both judgments (a) determining that lessee may be relieved from the forfeiture of the lease upon conditions above related, granting such relief and reinstating lessee under the lease; (b) failing to quiet title to the property in lessors against lessee.

### Lessee's Appeal

Five contentions are presented by lessee in its briefs:

■ 1. It is contended that lessee, in computing cash royalty due lessors, is entitled under the terms of the lease to make a deduction for a proportionate part of the cost of injecting distillate into the well.

The lease provides that lessee shall pay lessors a one-eighth part on all oil produced and saved "after making the customary deductions for treatment, temperature, water and b.s." The evidence discloses that there was no treatment of the oil in any sense of the word. The oil was not subjected to any processing. The injection of distillate was not a treatment of the oil but was for the purpose of increasing production— to obtain oil in paying quantities. Likewise, evidence was introduced showing it was the custom in the oil industry that the expense of injecting distillate as an aid in pumping and to increase production should be borne exclusively by lessee and that the latter should pay its own "overhead" expense. In the absence of an agreement to the contrary it was the custom in the oil industry in computing royalty that the lessee should not charge any portion of its overhead expense to the lessor.

It is the rule that if there is any substantial evidence in the record, contradicted or uncontradicted, which will support the trial court's finding of fact an appellate court will not consider evidence in conflict therewith and will not disturb the trial court's finding.

The evidence sustains the finding that lessee improperly attempted to charge lessors with a proportionate share of its overhead and of the expense of injecting distillate into the wells for the purpose of increasing production.

■ 2. Lessee maintains that when lessors elect to take their royalty in kind they are entitled only to the crude petroleum in its natural state and are not entitled to take the oil as produced from the wells without deducting the distillate injected into it by lessee.

The lease provides that lessors at their option shall have the right to take their royalty in kind which lessee shall deliver

into tanks maintained by it "or at the mouth of the well" to pipe line designated by lessors. The court decreed that in computing the total volume of monthly production and one-eighth part thereof the volume of distillate injected into the well by lessee during such month may be deducted. The evidence shows that there are other methods of increasing the flow of oil than the use of distillate—injection of steam is one. Since lessee need not have used distillate but nevertheless did so it must account for the oil as it came from the well. The objection made to this portion of the decree is untenable. The judgment is in accordance with the lease.

3. Lessee argues that it is not proper to include as a part of the basis for computing the cash royalty the theoretical value to lessee of a covenant in an oil purchase contract to return to lessee distillate equal in amount to that injected into the well.

The court found, upon substantial evidence, that lessee entered into the agreement with Douglas Oil Company whereunder that company paid a lower price for oil and agreed to deliver distillate to lessee for the purpose of evading its obligation to pay royalty to lessors as provided in the lease, thus indirectly charging lessors with a share of the cost of injecting distillate as a production cost. The benefit obtained by lessee from the Douglas contract was at the expense of the landowners. The judgment prevents such a result.

4. Lessee further contends that the requirement that the money royalty be based upon the contract price or market value of the oil, whichever is higher, is contrary to the provisions of the lease.

The lease provides that royalty is to be paid upon the "value of all oil . . . at the posted market price in the district in which the leased premises are located, for oil of like gravity, on the day the oil is run into the pipe line or tank."

The judgment provides that lessors' right to money royalties is not limited by the price or consideration received by lessee under the existing contract with Douglas Oil Company and that if there be no posted market price royalty shall be computed upon the price or consideration received by lessee under its contract with Douglas Oil Company or upon the fair market value, whichever shall be the higher. There is no posted price in the field in which the wells in question are located. This provision of the judgment insures to lessors the royalty to which they are entitled under the terms of the lease. Since there is no posted price the royalty must be computed

on some other basis. The amount to be received by lessors should not be permitted to be based on any price, however low, for which lessee might sell. If the fair market price is higher than lessee's selling price lessors are entitled to one-eighth of it. If lessee is fortunate enough to have a contract that yields more than the market price lessors are entitled to benefit from such contract. The judgment is a barrier to any attempt by lessee to evade payment to lessors of their fair share of the proceeds of the wells.

5. Not separately stated nor specially urged is lessee's assertion that that portion of the royalty which became due, more than four years prior to the filing of lessors' cross-complaint should not have been included in the judgment. Since the statute of limitations was not pleaded by lessee nor the issue raised in any manner in the trial court such defense has been waived. (*Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal. 2d 740, 744-5 [47 P.2d 273].)

### LESSORS' APPEAL

Lessors contend that the court erred in (1) granting lessee relief from the forfeiture of the lease upon condition that it pay into court the full amount of the money judgment rendered against it; (2) reinstating lessee to its rights and privileges under the lease after it had complied with the condition; (3) failing to quiet lessors' title against lessee.

The court found as a fact that lessee at all times had been honest in its contention that it was not obligated by the terms of the lease to pay the amount found by the court to be due and unpaid to lessors; that an honest dispute had existed between the parties concerning the computation of the royalty; that while lessee had voluntarily refused to pay the royalties in full its refusal was solely by reason of its honest contention and belief it did not owe the amount and was not obligated by the lease to pay it.

In relieving lessee from forfeiture the court deemed that its honest belief the money was not owing to lessors was a good and sufficient reason for not having paid it. Why should one be compelled to pay a debt until there has been an adjudication of the rights of the parties if he in good faith denies the indebtedness? When the dispute reached the point where notice of default was served lessee commenced this action for declaratory relief for the purpose of obtaining such adjudication. Lessee contended before the action was filed, in its pleadings, at the trial, and contends on this appeal it is not

liable for the amount awarded to lessors. The trial court had before it the evidence, oral and documentary, had the opportunity of observing the witnesses and the manner in which their testimony was given, and evaluated it. It is not within our province to assume or to override the prerogatives of the trial court. Substantial evidence sustains the finding and the usual rule in such a case must prevail here.

An elaborate opinion was filed by the trial judge concerning all features of the case, including the evidence relating to the dispute and lessee's belief in its position, in which it is said: "Under the Court's broad equity powers, and this is a case in equity, the Court is of the opinion that to declare a forfeiture herein would be harsh and inequitable and not contemplated by our law under the particular facts of the case."

The trial court's findings that lessee was wrong in its contentions regarding the construction of the lease and our affirmance of the judgment by this opinion are not determinative that lessee was not acting honestly and in good faith in the position it took that the injection of distillate into the wells was "treatment" for which it was entitled to make a deduction from the royalty. "Treat" is defined in Webster's New International Dictionary (1947 ed.), as "To subject to some action, as of a chemical reagent; as, to *treat* a substance with sulphuric acid; often to subject (a natural or manufactured article) to some process to improve its appearance, taste, usefulness, etc.; to process; . . ." "Treatment" is defined as "Act, manner, or an instance, of treating, esp. of treating . . . a substance, as in processing; . . ." That there was a further reasonable ground for lessee's contention is evidenced by the fact that it had received an opinion from an attorney (not one of counsel in the instant action) advising that its position was well taken. True, lessors furnished a contrary opinion from their attorneys. These opposing opinions did not clarify the situation. They merely muddied a water already turbulent. They did no more than furnish confusion for lessee as to its legal rights and a further reason for refraining from paying a disputed claim until its legality should be determined by the court. The fact that this case is now before us with earnest arguments for both parties may be taken as evidence that the proposition is not to be brushed aside as being without merit.

Lessors refer to the general rule that not only fraud or illegality but any unconscionable conduct will prevent a person from obtaining equitable relief, citing *DeGarmo* v. *Goldman,*

19 Cal.2d 755, 764 [123 P.2d 1]. This case did not involve forfeiture. The plaintiff sought to have directors of a corporation removed for malfeasance. The court held that in such a case wrongful acts committed by the plaintiff connected with the controversy would bar him from recovery.

Lessors argue that equity will not relieve from forfeiture caused by a willful default; that a voluntary default is willful; that since lessee's default was voluntary it was willful and therefore it is not entitled to reinstatement under its lease. This contention has been covered by the court's findings and by our previous discussion. The court found that lessee intentionally failed to pay the royalty but this does not mean there was a corrupt motive in its failure. Such motive is negated by the finding that lessee was honest in its assertion that it did not owe the amount demanded. Lessors cite *Blue Ridge etc. Co.* v. *Proctor,* 327 Pa. 424 [194 A. 559], as sustaining their contention. In that case a lessee misrepresented its ability to pay rent in order to persuade the lessors to accept a lower rent. After declaration of forfeiture it claimed to be able to pay rent and filed a bill in equity to set aside the forfeiture. That case is not authority in the instant action since (1) there was an inexcusable falsity on the part of the lessee as to its ability to pay, (2) there was no claim that its position had been honestly taken as the court found in the case at bar, (3) the court declared that the plaintiff's conduct was so inconsistent with good faith and fair dealing as to preclude equitable relief—just the opposite of the trial court's findings here. In other cases cited by lessors the parties seeking equitable relief had been guilty of inequitable practices without excuse.

Lessors cite cases in which it is stated that "the rule that forfeitures are not favored in law does not apply to oil and gas leases." Although this general language is found in some of the decisions it will be noted that the cause of the forfeiture was failure to comply with drilling requirements. It is so stated in *Slater* v. *Boyd,* 120 Cal.App. 457, 460 [8 P.2d 182]. The language above quoted is found in *John* v. *Elberta Oil Co.,* 124 Cal.App. 744, 747 [13 P.2d 538], and in *Hall* v. *Augur,* 82 Cal.App. 594, 600 [256 P. 232], but in each case nonperformance of drilling provisions of the lease caused the forfeiture. Because of the danger that oil and gas from lessors' property might be withdrawn through wells on adjoining lands the rule as to forfeiture for failing to drill wells is as above announced. No cases have been cited to us in which

the courts have departed from the rule that equity abhors a forfeiture and will relieve from it except where the lessee has failed to drill wells according to his contract.

██ Lessors contend that lessee should not be relieved from forfeiture because it did not (1) plead ability and willingness to pay the amount due, (2) tender the amount due with interest thereon, (3) seek relief from forfeiture. Its pleading for declaratory relief was a sufficient indication of its willingness to abide by the judgment of the court as to its obligations under the lease and to pay according to the court's construction of the contract. It paid into court the amount demanded in lessors' notice of default—interest was not mentioned in that notice. The full amount of royalties with interest was paid into court as required by the judgment of February 27, 1948. It was not incumbent on lessee to ask relief from a forfeiture the existence of which (1) was denied at all times by it, (2) was not established until judgment was entered.

The judgment shows an understanding of equitable principles. Lessors will receive complete financial compensation to which they are entitled under the lease—royalties in full with interest thereon. The amount found by the court to have been in default is small indeed as compared with lessee's investment—no doubt one of the factors influencing the court in providing for relief from the forfeiture which it said in its opinion ''would be harsh and inequitable and not contemplated by our law under the particular facts of the case.'' The lease is so construed that there will be no room for dispute hereafter with reference to the matters in contest and lessee's vast investment will not be wiped out.

Judgment affirmed.

Moore, P. J., concurred.

McCOMB, J.—I dissent and adhere to the conclusions reached by this court in *El Rio Oils Ltd.* v. *Chase*, 93 *(Cal. App.) [207 P.2d 885].

A petition for a rehearing was denied January 16, 1950. McComb, J., voted for a rehearing.

Appellants' petition for a hearing by the Supreme Court was denied February 23, 1950.

---

*A rehearing was granted on August 15, 1949.