Filed 5/15/13  Lawrence v. JR Enterprises CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL LAWRENCE et al.,<br><br>    Plaintiffs, Cross-defendants and Appellants,<br><br>    v.<br><br>JR ENTERPRISES, L.P.,<br><br>    Defendant, Cross-complainant and Respondent. | G044999 (consol. w/ G045163)<br><br>(Super. Ct. Nos. 30-2008-00111057, 30-2008-00112740)<br><br>O P I N I O N |

Appeals from a judgment and postjudgment orders of the Superior Court of Orange County, Robert J. Moss, Judge.  Affirmed.

Beus Gilbert, Franklyn D. Jeans, Tiffany E. Cale; Mahaffey & Associates, Douglas L. Mahaffey; Julander Brown & Bollard and William C. Bollard for Plaintiffs, Cross-Defendants and Appellants.

Horvitz & Levy, David M. Axelrad, Kris Bahr; Barnes Crosby Fitzgerald & Zeman, Larry S. Zeman and Eric P. Francisconi for Defendant, Cross-complainant and Respondent.

\*          \*          \*

This action involves a dispute over entitlement to a one-acre parcel of real property in long-term ground lease covering 14 acres. A lease provision allowed the original property owner and his two children to live on the acre as long as they desired, but required delivery of the parcel to the lessee if they decided to no longer live there. After the original owner and his children passed away, current owners Michael and Victoria Lawrence (landlords) refused to deliver the parcel to the current lessee, JR Enterprises, L.P. (tenant), resulting in various actions against each other.

In a bench trial, the court found certain of landlords' claims to be barred by the statutes of limitations, waiver, estoppel, and laches. After a jury trial on landlords' remaining causes of action, the court directed a verdict for tenant on its claim landlords had breached the lease by failing to deliver the parcel. Although it also directed a verdict for landlords that tenant had breached the lease by excluding certain calculations from its rent payment, it granted tenant relief from forfeiture of the lease. (Civ. Code, § 3275; all further statutory references are to this code unless otherwise stated.)

In this consolidated appeal from the judgment (G044999) and denial of their postjudgment motions (G045163), landlords contend the court erred by not voiding the one-acre lease provision under section 715 [nonvested lease invalid if term not commenced within 30 years], nonsuiting their fraud claim; and excluding certain evidence. They also argue substantial evidence does not support the grant of relief under section 3275, the application of affirmative defenses to bar certain claims, or the jury's award of damages. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In 1963, Oliver Baker entered a 100-year ground lease for a 14-acre parcel with developers. The lease allowed the development of 13 acres, and permitted Oliver and his two children, Beatrice Brewer and Albert Baker, to live on one acre for as long as

2

they desired but once they "elect no longer to reside on the said parcel, possession thereof shall be delivered to" developers.  On top of monthly rent, the lease required payment of 6 percent of any gross receipts in excess of $1.5 million "derived in whatsoever manner from the demised premises" during the preceding five years.  The lease was amended in 1964 and 1971 without substantive change.

The 13 acres was developed into a mobile home park and transferred to several other companies before tenant took possession.  Tenant and its predecessors accompanied their excess rent payments with reports summarizing the mobile home park's yearly rent receipts.

After Oliver passed away in 1968, Albert and Beatrice continued living on the property until their respective deaths in 2007 and 2009.  Neither had biological children; however, Beatrice adopted Lawrence, her adult nephew, in order to devise the 14 acres to him.

In 2008, tenant paid landlords $241,951 in excess rent and issued a report summarizing the mobile home park's gross receipts for 2003-2007.  Tenant granted landlords' request to inspect its accounting records for the 2008 report.  In October, landlords issued a notice of default demanding an additional $297,981 in rent, along with a demand letter and an accountant's report outlining the excess rent calculation.  Three months later, tenant allowed landlords and their accountants to inspect its books related to all of the five-year reports before the 2008 report.

Following Beatrice's death in March 2009, tenant requested the one-acre parcel be delivered to it for development.  Landlords refused, claiming the lease provision requiring them to do so was invalid.

In August, landlords retracted the 2008 notice of default and issued two new ones.  The first provided tenant failed to pay the excess rent for a five-year period between 2004 to 2008, "the exact amount of which only you are aware."  The second was

3

identical except it addressed the "five (5) year periods of 1974-1978, 1979-1983, 1984-1988, 1989-1993, 1994-1998, and 1999-2003 . . . ."

Landlords sued tenant for quiet title and cancellation of the lease, and declaratory relief, asserting the lease provision requiring the one-acre parcel be transferred to tenant was invalid under section 715 (main action). Tenant filed a cross-complaint for declaratory relief and a separate complaint (tenant's action). Tenant's second amended (operative) cross-complaint and complaint both allege, inter alia, breach of contract for failure to deliver the one-acre parcel as required by the lease and declaratory relief.

In the main action, landlords responded to tenant's second amended cross-complaint with their own cross-complaint for fraud based on the exclusion of gross receipts from the five-year reports, lease cancellation due to fraudulent inducement, undue influence, and unconscionability, and financial elder abuse in fraudulently inducing Oliver to sign the lease in 1963 and incorrectly reporting gross receipts to Beatrice and Albert when they were 65 years old or older. They also cross-complained in tenant's action, alleging claims for breach of written lease and declaratory relief. The two actions were consolidated.

As to the main action, the court granted tenant's motion for summary adjudication of the declaratory relief claim, finding section 715 did not apply retroactively to invalidate the lease. Landlords agreed to a bench trial on their unconscionability claim and any affirmative defenses. The court found the lease was not unconscionable and that landlords' claims for fraud, cancellation of the lease, financial elder abuse, and breach of lease, except to the extent they were based on the 2008 report, were barred by the statutes of limitation, laches, waiver, and estoppel.

In phase 2, a jury trial was held on tenant's breach of contract claims in both actions and landlords' claims for breach of contract, fraud and elder abuse arising from the 2008 report. On landlords' fraud claim, the court granted a nonsuit, finding no

4

evidence of detrimental reliance on representations made in the 2008 report. The court thereafter directed a verdict in tenant's favor on its breach of contract claim, ruling as a matter of law landlords breached the lease by failing to deliver the one-acre parcel upon Beatrice's death. It also directed a verdict in landlords' favor on their breach of contract claim, finding tenant breached the lease by failing to include utility receipts, mobile homes sales, manager lodging, and late fees in its gross profits calculation for the 2008 report. The parties stipulated landlords' damages totaled $90,382.

On the two issues submitted to it, the jury determined tenant's damages to be over $170,000 and rejected landlords' elder abuse claim based on the 2008 report. The court subsequently ruled landlords were not entitled to forfeiture of the lease.

## DISCUSSION

*1. Section 715*

Enacted in 1991, section 715 provides, "[a] lease to commence at a time certain or upon the happening of a future event becomes invalid if its term does not actually commence in possession within 30 years after its execution." Landlords contend the court erred in, among other things, concluding section 715 does not apply retroactively to invalidate any provision of the 1963 lease. We disagree.

Whether a statute applies retroactively is reviewed de novo. (*In re Marriage of Hill and Dittmer* (2011) 202 Cal.App.4th 1046, 1055.) Because of due process concerns and the proscription against ex post facto laws, "'a statute may be applied retroactively only if it contains express language of retroactivity or if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application.'" (*Bullard v. California State Automobile Assn.* (2005) 129 Cal.App.4th 211, 217.)

Nothing in the language of section 715 indicates the Legislature intended it to operate retroactively. In fact, section 3 specifically states, "[n]o part of [the Civil Code] is retroactive, unless expressly so declared."

Landlords nevertheless argue section 715 is retroactive because Probate Code section 21202, subdivision (a), provides "this part applies to nonvested property interests and unexercised powers of appointment regardless of whether they were created before, on or after January 1, 1992." But they have not shown tenant's property interests were "nonvested." To the contrary, "[a] lease which becomes immediately effective vests in all respects at that time, and rights under it, though exercisable in the future, do not have the characteristics of a contingent or future estate." (*Fisher v. Parsons* (1963) 213 Cal.App.2d 829, 838-839, 841-842, disagreed with on another ground in *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 876.) The lease here became effective immediately in January 1963. At that time, tenant's rights vested as to "those certain premises consisting of fourteen acres," including the subject one-acre parcel. It does not follow tenant's rights did not vest merely because it could not immediately exercise them due to the lease provision allowing Oliver and his children to live on the one-acre parcel as long as they desired. Rather, tenant had a "presently vested right . . . to occupy in the future" the one-acre parcel. (*Fisher v. Parsons*, *supra*, 213 Cal.App.2d at p. 842.)

Probate Code section 21202 thus does not apply and we need not consider the legislative history of the California Uniform Statutory Rule Against Perpetuities. (*Shaver v. Clanton* (1994) 26 Cal.App.4th 568, 573.) And because there is no indication section 715 was intended to operate retroactively, it is unnecessary to address landlords' claim it voids the one-acre lease provision.

6

## 2. *Relief from Forfeiture under Section 3275*

Under section 3275, a party may be relieved from forfeiture "upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." The court granted tenant such relief, finding "no wrongful intent, gross negligence, or willful or fraudulent breach of duty" in that tenant interpreted the lease in a manner it thought appropriate and as it had done for many years, the jury found it did not retain rent for a wrongful use or with an intent to defraud, and any breach "was not sufficiently material or substantial to justify the forfeiture."

Landlords assert this was error because (1) the court improperly shifted to them the burden to show tenant's conduct was willful or grossly negligent; (2) tenant did not "make 'full compensation" before requesting relief from forfeiture; and (3) the evidence does not support the finding "[t]enant's conduct was neither willful nor grossly negligent." Their failure to provide any citation to the record where the court shifted the burden to them forfeits the first issue. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) Their other claims lack merit.

A trial court may grant relief from forfeiture conditioned upon payment within a reasonable time. (See *Scarbery v. Bill Patch Land & Water Co.* (1960) 184 Cal.App.2d 87, 106 [affirming judgment fixing amount due and giving defaulting party "a reasonable time to pay," noting "numerous cases have held that such a judgment is in accordance with the law and in consonance with equity"]; see also *El Rio Oils, Ltd. v. Chase* (1949) 95 Cal.App.2d 402, 413 [affirming relief from forfeiture of lease conditioned on full payment within 15 days of judgment] (*El Rio Oils*).) But such condition was unnecessary here as landlords were fully compensated by tenant's damage award, which offset the unpaid rent. (See *Parsons v. Smilie* (1893) 97 Cal. 647, 653 ["equity will relieve where the thing may be done afterwards, or compensation can be made for it . . . so as to put the party in precisely the same situation"].)

Landlords argue a judicial order for payment of breach of contract damages does not satisfy section 3275's requirement of full compensation. But the cases they cite do not stand for that proposition. In fact, *Fowler v. Vaughan* (1948) 86 Cal.App.2d 772 recognized section 3275 allows a court to permit a party "to make up the delinquent payments within a reasonable time . . . except, among other things, where a failure to comply with the contract has been willful." (*Fowler v. Vaughan*, at p. 777.) And although the remaining cases note the defaulting party's failure to tender the full amount due, they do not address the issue of when compensation must be made under section 3275 or the propriety of a court affording a reasonable time to pay following a determination after trial on the amount owed. "'It is axiomatic that cases are not authority for propositions not considered.'" (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1228.)

On the issue of willful or grossly negligent conduct, landlords contend "willful" "simply denotes intentional conduct." We disagree. A breach of a contract may be intentional but nevertheless not be "willful" under section 3275. (*El Rio Oils*, *supra*, 95 Cal.App.2d at p. 412 [rejecting lessors' claim lessee's default was willful because it was voluntary and holding that although intentional, the failure to pay was not necessarily willful under section 3275 where lessee honestly but mistakenly asserted "it did not owe the amount demanded"]; see also *Barkis v. Scott* (1949) 34 Cal.2d 116, 123 [good faith belief defaulters "had sufficient funds to cover the checks prevents their breach from being willful"]; *Crofoot v. Weger* (1952) 109 Cal.App.2d 839, 842 [evidence supported finding buyer's breach, based on belief seller's negligence caused fire leading to buyer's failure to pay, "though intentional in the sense [they] knowingly withheld the payment due, was yet not so wil[l]ful so as to prevent relief"].) The cases cited by landlords are inapposite as none involve an honest dispute about the interpretation of a contract or the amount owed. We conclude the trial court was within its discretion in finding tenant's

actions not willful under section 3275 based on its determination tenant interpreted the lease in good faith in excluding utility payments and mobile home sales.

Landlords distinguish *El Rio Oils* on the grounds the defaulting party in that case disclosed the existence of revenue giving rise to the dispute, filed a declaratory relief action, and deposited the disputed funds into court. But *El Rio Oils* never stated those were prerequisites to section 3275 relief. Rather, they were factual matters it considered in concluding lessee did not act willfully in not paying the amount claimed.

In any event, numerous declaratory relief actions were filed in this case by both parties. As for not paying the disputed amount into court, landlords' operative notices of default, unlike in *El Rio Oils*, never specified the precise sum due and the court could have reasonably determined that amount was not ascertainable until the conclusion of trial. Substantial evidence also supports the court's implied finding tenant did not willfully hide revenue or otherwise engage in willful or grossly negligent conduct. Tenant's manager testified he excluded gross utilities and mobile home sales from the excess rent calculation because he did not consider them gross receipts derived from the property within the meaning of the lease, always intended to pay the full rent amount owed under the lease, and believed he had done so. Landlords acknowledged the 2008 report did not hide tenant's method of calculating excess rent payments, in that it revealed both utility income and the expenses they believed should not have been deducted from the computation, and that upon their initial request in 2008, tenant willingly allowed the inspection of its financial records. Landlords' experts found those records accurate, the calculations for "the various line items within the general ledger" correct, and no attempt to conceal the income received from the mobile home sales.

Landlords' claim the evidence supports a conclusion contrary to that found by the court is nothing more than a request that we reweigh the evidence, which we may not do. Where two or more inferences can reasonably be drawn from the record, we defer to those drawn by the trial court. (*In re Woodham* (2001) 95 Cal.App.4th 438, 443

9

[abuse of discretion not shown when party presents facts that merely provide an opportunity for a difference of opinion].)

The challenges to the court's reasons for granting relief from forfeiture also lack merit. First, although landlords argue the evidence does not support the finding they waived tenant's conduct by not previously claiming a breach of the lease provisions, the court never mentioned waiver. Rather, it noted the absence of a prior claim as part of its determination tenant interpreted the lease in a manner consistent with how it had been interpreted by both parties for years, and not due to wrongful intent, gross negligence, or willful breach of duty.

Second, landlords contend the court erred in relying on the jury's finding tenant "did not retain rent money belonging to Beatrice . . . for a wrongful use or with an intent to defraud" because that was in connection with their elder abuse cause of action, which has a different standard. The court, however, merely referenced the jury's finding as further evidence in support of its conclusion tenant did not withhold rent payment for a wrongful use or intent to defraud; it did not equate the two standards.

Finally, landlords assert the court erred in finding that any breach was not sufficiently material to justify forfeiting the lease given that neither the statute nor the lease provided for a materiality exception. But the determination of whether the breach was so material as to constitute cause for the forfeiture of a lease is a necessary precursor to whether tenant is entitled to relief because "although every instance of noncompliance with a contract's terms constitutes a breach, not every breach justifies treating the contract as terminated." (*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1051.) The court thus did not abuse its discretion in considering the materiality of the breach. As to landlords' claim no evidence supports that conclusion, they merely disagreed with the court's evaluation, which does not show the evidence is insufficient to support it. (*California Native Plant Society v. City of Rancho Cordova* (2009) 172 Cal.App.4th 603, 626.)

10

*3. Nonsuit on Fraud Claim*

Landlords contend the court erroneously granted nonsuit on their fraud claim on the basis they failed "to establish the required element of justifiable and detrimental reliance upon the alleged misrepresentation(s)" in the 2008 report. In reviewing the grant of a nonsuit, "we independently view the evidence most favorably to plaintiff "'resolving all presumptions, inferences and doubts in [its] favor.'" [Citation.] . . . . "'Although a judgment of nonsuit must not be reversed if plaintiff's proof raises nothing more than speculation, suspicion, or conjecture, reversal is warranted if there is 'some substance to plaintiff's evidence upon which reasonable minds could differ . . . .'"'" (*Avidor v. Sutter's Place, Inc*. (2013) 212 Cal.App.4th 1439, 1455.) Reversal is not warranted.

Evidence of justifiable reliance is necessary in order for a plaintiff to prevail on a cause of action for fraud based on concealment. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 794.) Landlords argue they established this element because had they known tenant was underreporting the gross receipts, they would have taken steps to correct it, as shown by their assertion of claims in 2009 and 2010. (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1093 [in a fraud claim based on concealment, "[o]ne need only prove that, had the omitted information been disclosed one would have been award of it and behaved different[]"].) But the very fact they asserted those claims shows they did not rely on any purported omissions in the 2008 report.

Landlords maintain they were entitled to a presumption of reliance because the omitted information was material. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 977 ["a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material"].) But the presumption only applies where there is no "evidence conclusively rebutting reliance."

11

(*Ibid.*)  Here, landlords rebutted any presumption of reliance by challenging the very omissions they claimed to have relied on.  The court did not err in granting nonsuit.

## 4. *Sufficiency of the Evidence*

### a. *Statutes of Limitations, Waiver, Estoppel and Laches*

After a bench trial, the court found landlords' pre-2008 claims for breach of contract, fraud, and elder abuse due to tenant's miscalculation of the proper amount of excess rent in its five-year reports were barred by the statutes of limitations, laches, waiver, and estoppel.  Although landlords initially claimed the court erred in ruling it waived its right to a jury trial on these affirmative defenses, they have withdrawn the argument.  But they maintain no evidence supports the ruling.

In particular, landlords assert the only "fact" supporting the court's statement of decision is that from 1978 to 1986, their prior trustee investigated the files of Oliver's attorney and those of their prior institutional trustee "for lease misrepresentation [and] underpayment of rent claims.  Anything known now could have been learned then as closer in time to the formation of the lease."  According to landlords, this "does not identify the records that were investigated nor the documents that were contained in such records which would have notified [them] as to the omitted revenues."

But even if so, the parties agree the contested affirmative defenses "began to accrue when [they] knew, or should have known, about [t]enant's failure to pay rent on total gross revenue."  A cause of action begins to accrue when the plaintiff actually discovers its cause of action or could have discovered it through the exercise of reasonable diligence.  (*Jolly v. Eli Lilly & Co*. (1988) 44 Cal.3d 1103, 1109.)  It begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry (*id.* at pp. 1110-1111), i.e., "when the plaintiff suspects, or should suspect, that she has been wronged" (*id*. at p. 1114).  Thus, "'[i]f a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to

12

investigate further and is charged with knowledge of matters which would have been revealed by such an investigation.'" (*McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 108, fn. omitted.)

The record shows that beginning in 1980, tenant and its predecessors delivered to landlords reports in which the amount of gross utility receipts collected was disclosed, despite not included in the rent calculation. That supports the court's finding landlords "had enough information, when they received those reports, to challenge them. That[] starts the clock ticking on the statute of limitations." Additionally, as landlords acknowledge, one of their prior trustee's goals in viewing Oliver's attorney's files in 1978 was "to determine whether they can obtain an increase in the rents under the ground lease . . . ." Viewing the evidence and all inferences in the light most favorable to the court's ruling as we must (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765), substantial evidence supports its decision to charge landlords with matters that would have been revealed by further investigation.

Landlords maintain the court improperly disregarded evidence that it first obtained tenant's income statements in June 2008, and its general ledgers and bank statements in July and August 2010, and thus the earliest date they "could have or should have known about [t]enant's failure to pay rent on total gross revenue was in June 2008." But as the "sole arbiter of the facts" (*Navarro v. Perron* (2004) 122 Cal.App.4th 797, 803), the court had the prerogative to conclude otherwise, as it did. Landlords essentially request that we reweigh the evidence, which we will not do. For the same reason, we reject landlords' claim their former trustee testified his investigation did not reveal or suggest tenant was not paying rent on the total gross revenue.

Nor do we find merit in landlord's assertion that notice of tenant's payment of rent on net rather than gross utilities does not provide notice of failure to pay rent in other revenue categories. Because landlords had a duty to investigate, it would have been

13

reasonable for the court to determine a further investigation of the type conducted in 2008 and 2010 would have revealed the errors.

### b. Damage Award

Landlords contend no evidence supports the jury's award on tenant's breach of contract claim because it was not calculated in accordance with section 3334, which governs damages for "the wrongful occupation of real property." But tenant did not assert a claim for wrongful occupation; it sued for breach of contract.

"For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, § 3300.) "[T]he proper measure of damages for a landlord's failure to deliver possession of the premises leased is the difference between the agreed rent and the rental value of the premises during the term of the lease." (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884.) A tenant may also prove it suffered "lost profits" as a result of a landlord's breach of a lease, as tenant did here, rather than seeking the "difference between the agreed rent and the rental value of the premises." (*S. Jon Kreedman & Co. v. Meyers Bros. Parking-Western Corp.* (1976) 58 Cal.App.3d 173, 184 [a tenant may pursue either measure of damages].)

Landlords assert tenant's lost profits "were entirely speculative." They were not. "'''"[E]xpert testimony alone is a sufficient basis for an award of lost profits in the new business context when the expert opinion is supported by tangible evidence with a "substantial and sufficient factual basis" rather than by mere "speculation and hypothetical situations."'''" (*Parlour Enterprises, Inc. v. Kirin Group, Inc.* (2007) 152 Cal.App.4th 281, 288.) Here, based on data from a mobile home park surrounding the one-acre parcel on three sides, which had been successfully run by tenant since the mid-1960's, tenant's expert testified tenant would have gained an additional $181,433 if the

14

property had been delivered to it for development. That constitutes substantial evidence and the fact the amount calculated by tenant's expert ($181,433) differed from the amount awarded by the jury ($170,547) matters not because "[c]ertainty as to the amount is not required; reasonable certainty is sufficient." (*Ibid*.)

We reject landlords' claims the lost profits award was speculative because tenant intended to install and sell prefabricated homes on the one-acre parcel without prior experience in the prefabrication business and did not apply to have the parcel rezoned from agricultural use until the eve of trial. In addition to tenant's expert testifying he based his calculation on tenant's plan to develop 14 additional mobile homes for rent, the planning commission unanimously granted the application for rezoning, supporting an inference it would have done so sooner had landlords delivered the property to tenant, but since they did not tenant had no reason to apply earlier for rezoning.

As to landlords' contention the expert did not include costs in his analysis, the expert specifically testified he subtracted expenses from the estimated rental income tenant would have earned from the one-acre parcel. Although landlords are correct the testimony cited by tenant refers to a different scenario than the one under which the jury awarded damages, the expert testified he used the same approach for both, which the jury could have reasonably interpreted as meaning he included expenses in his calculation.

Finally, landlords maintain that "in the context of real property transactions, 'lost profits' are only recoverable on a breach-of-contract claim if the circumstances giving rise to such damages were known with certainty at the time that the parties entered into the underlying contract." Raised for the first time in the reply brief, the argument is forfeited. (*Martin v. PacifiCare of California* (2011) 198 Cal.App.4th 1390, 1410, fn. 12.)

15

5. *Exclusion of Evidence of Prior Five-Year Reporting Periods*

Landlords argue the court abused its discretion in granting tenant's motion in limine to exclude evidence of the five-year periods prior to the 2008 report because they were time-barred. The contention lacks merit. After granting the motion in limine, the court suggested, and the parties agreed to, a bench trial on whether any claim, including the pre-2008 ones, were barred by the statute of limitations, laches, waiver or estoppel. During that bench trial, the parties stipulated to the admission of several pre-2008 reports and questioned witnesses about their knowledge of them. Landlords do not dispute this but maintain the court erred in concluding the claims based on tenant's pre-2008 excess rent reports are time barred, which we have already rejected.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.

16